(No. 3344—

MIDLAND OIL COMPANY, AN ILLINOIS CORPORATION, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed June 13, 1939.*

MAURICE A. FRANK and ROBERT H. ELLISON, for claimant.

JOHN E. CASSIDY, Attorney General; MURRAY F. MILNE, Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

The Midland Oil Company, an Illinois Corporation, filed its complaint with the clerk of this court on January 14, 1939, alleging that it was engaged in the business of distributing and retailing motor fuel in the City of Chicago and State of Illinois; that it is equipped to do that business and is associated in business with the Sterling Fuel Oil Corporation also licensed to do business in the State of Illinois, and that all tax payments set forth in the bill of particulars were made by the Sterling Fuel Oil Corporation on behalf of the claimant.

Claimant quotes Section 6 of the Motor Fuel Tax Law and avers that there is no prohibition in the Motor Fuel Tax Law against the extending of credit by a distributor and retailer, to the user of motor fuel, and that it is the custom and usage and always has been the custom and usage in the motor

fuel trade, for the distributor and retailer of motor fuel to extend credit to the user thereof, and that in accordance with the custom and usage of the trade, the claimant did extend credit to many accounts to whom it sold motor fuel for use, and caused to be paid to the State of Illinois, through the Sterling Fuel Oil Corporation, three cents per gallon on the gallonage sold to the accounts to whom credit had been extended.

It is also averred that in the case of many of the accounts to whom credit was extended, claimant failed to collect the amount of the purchase price of the motor fuel sold to these accounts and failed to collect the motor fuel tax paid over by claimant in advance to the State of Illinois, and that many of these accounts have either gone out of business, become insolvent or bankrupt as appears from the bill of particulars attached to the complaint.

It is also averred that claimant made every possible reasonable effort and availed itself of every possible legal recourse in attempting to collect to the extent of, in one case, contesting the sale of business in the Supreme Court of the State of Illinois. The bill of particulars sets forth the dates of the sales, the names of the delinquent customers and the amounts of the indebtedness.

It is also averred that the claimant was acting as the agent of the State of Illinois in collecting motor fuel tax, and exercised reasonable diligence in attempting to collect the motor fuel tax from the accounts listed in the bill of particulars, but despite the diligence used in attempting to collect such accounts, it was unable to do so. The accounts date back to June 15, 1933 and there were several during the year 1933.

The total amount claimed is the sum of $4,313.63.

Shortly after the above named claim was filed, the Attorney General filed a motion to dismiss and bar the claim, and as grounds for the motion says that the complaint does not set forth a claim which the State of Illinois, as a sovereign commonwealth, should discharge and pay for the reason that there is no provision of law which entitles a licensed motor fuel distributor and retailer to a refund of motor fuel tax remitted by it on sales of gasoline used in motor vehicles upon the public highways where such distributor and retailer made said sales on credit and was unable thereafter to collect from the vendees.

The Attorney General refers to Section 2 of the Motor Fuel Tax Act (1929) (Chap. 120, Ill. Rev. Stat. 1937), which imposes a tax of three cents per gallon on motor fuel used in motor vehicles operated upon the public highways. Reference is also made to Section 3 of the same Act which requires that each distributor of motor fuel be licensed by the Department of Finance and give bond. Section 4 is set forth in considerable detail, and is to the effect that

"Every person holding a valid unrevoked license to act as a distributor of motor fuel shall, between the first and twentieth days of each calendar month, make return, under oath, to the Department, showing an itemized statement of the number of invoiced gallons of motor fuel purchased, acquired or received, the amount produced, refined, compounded, manufactured, blended, sold, distributed, and/or used by him during the preceding calendar month, the amount lost or destroyed, and the amount on hand at the close of business for such month; and in the case of a sale to another licensed distributor, as hereinafter provided in Section 6, the amount of motor fuel so sold, the name, address and license number of such purchasing distributor."

The Attorney General also makes reference to Section 6, which provides in part, as follows:

"Each distributor who sells any motor fuel for any purpose shall (except as hereinafter provided) collect from the purchaser at the time of such sale, three cents per gallon on all motor fuel sold, and at the time of making .his return, the distributor shall pay to the Department, the amount so collected, (less the deduction hereinafter provided) and shall also pay to the Department three cents per gallon on all motor fuel used by him during the period covered by the return."

Claimant's counsel argue, in opposition to the position of the Attorney General, that claimant's complaint sets forth a claim which the State of Illinois should discharge and pay even though there is no specific provision of law upon which the claim for refund is based, and argue that said claim for refund is based upon Sub-division 4 of Section 6 of the Court of Claims Law, which provides that the Court of Claims shall have power:

"to hear and determine all claims and demands, legal and equitable, liquidated and unliquidated, ex contractu and ex delicto, which the State as a sovereign commonwealth should in equity and good conscience discharge and pay."

The equity and good conscience law is relied upon by claimant here.

This court had before it the same doctrine in the case of *Crabtree* vs. *State of Illinois*, 7 C. C. R., page 207. We there held that:

"The provisions of paragraph 4 of Section 6 of Court of Claims Act with reference to equity and good conscience merely defines the jurisdiction of the court and does not create a new liability against the State nor increase or enlarge any existing liability and limits jurisdiction of court to claims under which State would be liable in law or equity, if it were suable, and where claimant fails to bring himself within the provisions of a law giving him the right to an award, he cannot invoke the principles of equity and good conscience to secure one."

Counsel for claimant refers to the case of *People* vs. *Kopman*, 358 Ill., page 479, and quotes therefrom as follows:

"The tax was delivered into the hands of the defendant as the agent of the State. The money was 'delivered' to him in the sense that word is used in Section 74 of the Criminal Code."

and in commenting thereon, claimant argues that this decision makes it clear that the distributors' duty to turn over to the State tax money collected by the distributor is absolute, but this decision under the "duty to collect" in no way excludes the reasonable extending of credit. The Supreme Court of Illinois in the Kopman case did use the language referred to by claimant, and went further. We quote from the bottom of page 482 and the top of page 483 as follows:

"The statute makes the distributor the agent of the State as a collector of the tax. It comes to his hands while he is acting in a fiduciary capacity as agent of the State for its collection. It in no sense belongs to the distributor but is the property of the State. Section 15 of the Act, as amended by an Act approved July 3, 1931, provides: 'Whoever * * * willfully fails or refuses to make payment to the Department of Finance as provided in either Section 6 or Section 7, shall be punished by a fine of not to exceed $5,000 or by imprisonment in the penitentiary for not less than one year nor more than five years or by both such fine and imprisonment.'"

Section 2 of the Motor Fuel Tax Act (Smith's Stat. 1933, chap. 120, par. 418) provides: "A tax is hereby imposed on the privilege of operating motor vehicles upon the public highways of this State after July 31, 1929, at the rate of three cents per gallon of all motor fuel used in such motor vehicles upon such public highways." Other sections of the Act define a distributor of motor fuel, provide for the licensing and bonding of distributors and for monthly returns to the Department of Finance. Section 6 of the Act requires each distributor to collect from the purchaser at the time of sale three cents per gallon on all motor fuel sold.

Claimant argues that the Act does not exclude or prohibit a distributor from extending reasonable credit. That is

true, and it would be an unlawful interference with the distributor's business if it did. If for business reasons a distributor desires to extend credit, that is entirely within his discretion. Section 6 of the Act requires each distributor to collect from the purchaser at the time of sale, three cents per gallon on all motor fuel sold. The above statement of claimant is only partially true. The law requires a collection of three cents from the purchaser at the time of the sale and the distributor has no power to extend credit for the amount of the sales tax.

In passing, it might be remarked that this is not an income tax and business losses are not deductible.

Claimant argues that an interpretation of the language of the Motor Fuel Act as prohibiting distributors from extending credit would result in the language meaning that the Act requires the distributor to pay the tax out of the distributor's own funds in such cases where the distributor did extend credit and failed to collect. This contention is answered by reference to Section 6 of the Motor Fuel Act above referred to.

Citations from the case of *State* vs. *Liberty Oil Company,* 97 So. 438 and *Standard Oil Company* vs. *Brodie,* 153 Ark. 114 are also cited and relied upon by claimant, but after a careful consideration thereof, we find no authority for holding that a distributor is not bound to pay the tax under the facts in this case. A distributor may extend credit under the Illinois Motor Fuel Act for the purchase price of the motor fuel, but must adhere to the opinion of the Supreme Court of Illinois in the case of *The People* vs. *Kopman,* 358 Ill. on page 482 wherein it is said: ''Section 6 of the Act requires each distributor to collect from the purchaser at the time of sale three cents per gallon on all motor fuel sold'' and we must hold that a sale takes place when the article is sold upon credit just the same as if cash had been paid therefor. There was no reservation of title, and by the nature of things, a conditional sale for motor fuel under the conditions here, did not take place.

An award, therefore, will be denied.