(No. 3649—

MARION MITCHELL AND D. H. HILLS, DOING BUSINESS UNDER THE PARTNERSHIP NAME OF MITCHELL & HILLS, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed November 10, 1942.*

HARRY C. PARTLOW AND C. A. WILLIAMS, for claimants.

GEORGE F. BARRETT, Attorney General; ROBERT V. OSTROM, Assistant Attorney General, for respondent.

CHIEF JUSTICE DAMRON delivered the opinion of the court:

Claimants seek an award of $271.95 as a refund of an over-payment in the remittance of Motor Fuel Taxes. A detail statement of the pertinent facts involved in this claim is set forth in the report of the Department of Finance and made a part of this record. It shows "that claimants were doing business as a partnership under the name of Mitchell & Hills, and was licensed as a distributor under the Motor Fuel Tax law on July 29, 1933; that they engaged in business as a licensed distributor under license number 1168, from that date to and including September 20, 1941, all operations being conducted at and near Casey, Illinois."

"On September 20, 1941 the Motor Fuel Tax Division, received a return on forms furnished by the Department of Finance showing inventories, sales, uses, and distribution of taxable motor fuel for the month of August 1941; remittance accompanying the return being in the amount of $1,196.99, such return indicating that claimants had ceased to engage in business after August 31, 1941. Following which the Department canceled said license same becoming effective September 20, 1941."

"That the Department upon making an audit established the fact that claimants over-paid the Department of Finance, Motor Fuel Tax Division, in the amount of $271.95 taxes in relation to their August 1941 operations, only."

"That the said error and overpayment of tax resulted from the claimants inserting the wrong figure for the actual inventory at the beginning of the month of August 1941; such error resulting from carrying forward to August, 1941 the amount sold, used, and distributed during July 1941, in place of the actual inventory as of the close of business July 31, 1941."

"That the correct actual inventory reported at the close of business July 31, 1941 was 16,884 gallons which inventory should have been entered as the opening inventory for August 1941. The claimant reported in error the opening inventory for August 1941 as 26,134 gallons."

"On October 8, 1941, an amended return was filed by the claimants showing the correct amount of tax due for August 1941. Such amount being $271.95 less than the

amount of tax actually remitted by the claimants to said Department of Finance.''

''That the books and records of said Department of Finance, Motor Fuel Tax Division, reflect an amount of $265.89, being the net amount representing an overpayment of $271.95 for August 1941, less $6.06 which amount represents an excess shortage of 202 gallons for the period from September 1, 1941 to and including September 20, 1941; the excess shortage in the amount of $6.06 being determined by final audit made by said Department of Finance, Motor Fuel Tax Division, on October 18, 1941. That the books and records of the respondent now show the claimants to have an unsatisfied credit of $265.89, and that said Department of Finance would have granted a credit for overpayment had the claimants retained their Motor Fuel Tax license, and continued to operate in the business of selling taxable motor fuel.''

The purpose of the Motor Fuel Tax Law as set forth in the Act, is ''to impose a tax upon the privilege of operating each motor vehicle upon the public highways of this State, such tax to be based upon the consumption of motor fuel in such motor vehicle,'' etc.

It is based upon the amount of motor fuel consumed in each motor vehicle. The tax is paid, in the last analysis, by the ultimate purchaser, but is collected in the first instance by the dealer, who is required to pay over to the State all moneys so collected by it. (Par. 423, Sec. 7.)

The money which is collected by the dealer and paid by it to the State is not the proceeds of a tax assessed against such dealer. The collection of the tax is made through the instrumentality of the dealer, who acts as an agent of the State in that behalf.

As between the claimant and the respondent, the payment made by the claimant pursuant to its August report, was not the payment of a tax, but was a payment made by an agent to its principal, in fulfillment of certain duties imposed upon it by law.

This case, therefore, is essentially different on the facts, from the cases which involve the voluntary payment of an illegal or excessive tax.

The law with reference to payments made under a mistake of fact is set forth in 21 R. C. L. 164, Sec. 191, as follows:

"Where money is paid to another under the influence of a mistake of fact, that is, on the mistaken supposition of the existence of a specific fact which would entitle the other to the money, and the money would not have been paid if it had been known to the payer that the fact was otherwise, it may be recovered. The ground on which the rule rests is that money, paid through misapprehension of facts, in equity and good conscience belongs to the person who paid it. Municipal corporations as well as individuals are subject to this rule. An error of fact is ordinarily said to take place either when some fact which really exists is unknown, or some fact is supposed to exist which really does not exist."

To the same effect see 48 Corpus Juris 759, Sec. 318, and annotation in 87 A. L. R. 649; also *Stempel* vs. *Thomas*, 89 Ill. 146; *Wolf* vs. *Beaird*, 123 Ill. 585; *Blomstrom* vs. *Dux*, 175 Ill. 435-439; *Jenson* vs. *Muting*, 256 Ill. App. 514.

The payment made by the claimant in this case clearly was made under a mistake of fact and therefore under the law as above set forth, claimant is entitled to the return of the amount of money overpaid by it.

An award is therefore entered in favor of claimant in the sum of $265.89.