GEORGE R. BECK, d/b/a Beck's Texaco Service, Plaintiff-Appellant and Cross-Appellee, *v.* THE DEPARTMENT OF REVENUE, Defendant-Appellee and Cross-Appellant.

Fifth District No. 82—614

Opinion filed January 10, 1984.

Ronald D. Stanley and James C. Cook, both of Walker and Williams, P.C., of Belleville, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Paul J. Bargiel, Special Assistant Attorney General, of Doss, Puchalski, Keenan & Bargiel, Ltd., and Rosalyn B. Kaplan, Assistant Attorney General, of counsel), for appellee.

JUSTICE JONES delivered the opinion of the court:

Plaintiff, George R. Beck, doing business as Beck's Texaco Service, brought the instant action for judicial review of a final assessment for delinquent motor fuel taxes rendered by the defendant, the Department of Revenue (Department). Following a hearing the trial court affirmed the Department's assessment of tax delinquencies against the plaintiff but reversed the Department's imposition of a fraud penalty for "wilful failure" to pay the amounts due. The plaintiff has appealed from the trial court's judgment in favor of the Department, and the Department has cross-appealed from that portion of the judgment reversing its assessment of a fraud penalty. We affirm.

The plaintiff's alleged tax liability stems from his failure to remit taxes pursuant to the Motor Fuel Tax Law (MFTL) (Ill. Rev. Stat. 1971, ch. 120, par. 417 *et seq.*) for the period from January 1971 through September 1974. It is undisputed that during that time he was engaged in the business of supplying motor fuel although he was not a licensed supplier under the terms of the MFTL.

The MFTL, at issue in this appeal, imposes a tax upon the privilege of operating a motor vehicle upon the State's public highways and waters. (Ill. Rev. Stat. 1971, ch. 120, pars. 418, 433.) This tax is based upon the consumption of fuel by vehicles operating in the State and is to be collected by distributors and suppliers of such fuel. (Ill. Rev. Stat. 1971, ch. 120, pars. 433, 422, 422(a).) Such persons are required by the MFTL to be licensed by the State, and they must further execute a bond with the State to protect against a failure to account for and pay the tax collected. Ill. Rev. Stat. 1971, ch. 120, pars. 419, 419(a); *People ex rel. Rice v. Wilson Oil Co.* (1936), 364 Ill. 406, 4 N.E.2d 847.

Section 3(a) of the MFTL (Ill. Rev. Stat. 1971, ch. 120, par. 419(a)) provides specifically:

"No person, other than a licensed distributor, shall act as a supplier of special fuel within this State without first securing a license to act as a supplier of special fuel from the Department."

Under section 5(a) (Ill. Rev. Stat. 1971, ch. 120, par. 421(a)), a licensed supplier is required to file monthly tax returns with the Department, itemizing the number of taxable gallons of special fuel purchased or sold during the preceding calendar month. A person whose license has been revoked must make a return, subject to the same conditions, for

the period immediately prior to the revocation of the license.

The supplier's duty to collect motor fuel taxes is set forth in section 6(a) of the MFTL (Ill. Rev. Stat. 1971, ch. 120, par. 422(a)), which states:

"A supplier, other than a licensed distributor, who sells or distributes any special fuel, which he is required by Section 5a [par. 421(a)] to report to the Department when filing a return, shall *** collect at the time of such sale and distribution, the amount of tax imposed under this Act on all such special fuel sold and distributed, and at the time of making a return, the supplier shall pay to the Department the amount so collected *** and shall also pay to the Department an amount equal to the amount that would be collectible as a tax in the event of a sale thereof on all such special fuel used by said supplier during the period covered by the return.

A person whose license to act as supplier of special fuel has been revoked shall, at the time of making a return, also pay to the Department an amount equal to the amount that would be collectible as a tax in the event of a sale thereof on all special fuel, which he is required by the 1st paragraph of Section 5a [par. 419(a)] to report to the Department in making a return."

Section 7 of the MFTL (Ill. Rev. Stat. 1971, ch. 120, par. 423) further provides:

"Any person, not licensed as a distributor or supplier, purchasing motor fuel as to which there has been no charge made to him of the motor fuel tax shall, if the same be thereafter used in the operation of a motor vehicle upon the public highways, make payment of the motor fuel tax *** on the amount so used ***."

As noted, the Department assessed a tax liability against the plaintiff for failure to make returns and pay the tax due under these provisions, and the trial court affirmed the Department's finding of tax delinquencies for the period in question. On appeal from this decision, the plaintiff contends that he cannot be held liable for failure to collect the tax due under the MFTL where, at the time of the pertinent sales, he had neither a current nor a revoked license to act as a supplier of special fuel. Since, he contends, the MFTL makes no provision for the collection of motor fuel taxes by one who is not licensed or bonded as a supplier, he had neither the authority nor the responsibility to collect such taxes from purchasers of the fuel at the time of sale. The plaintiff contends further that he should not be held liable for payment of the tax where, by statute, the legal incidence of the tax falls not upon the supplier but upon the eventual user of the motor fuel. See *American*

*Oil Co. v. Mahin* (1971), 49 Ill. 2d 199, 273 N.E.2d 818.

In addressing the plaintiff's contentions, we note preliminarily that no question is raised regarding the plaintiff's status as a "supplier" of special fuel under the MFTL (see Ill. Rev. Stat. 1971, ch. 120, par. 417.14) at the time of the relevant sales. It is the plaintiff's position, however, that because he was supplying fuel in violation of the licensing and bonding requirements of the statute, he was thereby relieved of the obligations imposed by statute upon those who complied with such requirements. While, as the plaintiff asserts, the MFTL makes no provision for the collection of taxes by an unlicensed supplier, this omission cannot, under relevant principles of statutory construction, be interpreted as an authorization to dispense with the collection of taxes under the MFTL.

The Illinois Supreme Court, in *Department of Revenue v. Joseph Bublick & Sons, Inc.* (1977), 68 Ill. 2d 568, 575, 369 N.E.2d 1279, 1282, reviewed the rules of construction used to interpret statutes relating to the collection of taxes, stating that:

> "A statute is to be reasonably interpreted according to its intent and meaning. A situation within the object, spirit and meaning of the statute falls within it, although it may be without the letter of the law. 'Where the spirit and intention of the legislature in adopting the acts are clearly expressed and their objects and purposes are clearly set forth, the courts are not confined to the literal meaning of the words used, when to do so will defeat the obvious intention of the legislature and result in absurd consequences not contemplated by it.' [Citation.] Specifically, in construing statutes relating to the collection of taxes, the policy of this court has been to give them a common sense meaning so as to avoid making collection difficult or impossible. [Citation.]"

Applying these rules to the instant case, it is plain that the legislature, in enacting the MFTL, intended that the motor fuel tax apply, except for specified exceptions, to all sales of fuel used in vehicles operating within the State (see *Pascal v. Lyons* (1958), 15 Ill. 2d 41, 153 N.E.2d 817) and that all persons supplying such fuel be licensed by the Department and be obligated to collect and remit motor fuel taxes. Having mandated that all suppliers be licensed in order to operate, the legislature quite reasonably specified reporting requirements for "licensed" suppliers and, indeed, included a final reporting requirement for suppliers whose licenses had been revoked. Since the statutory scheme does not permit individuals to supply motor fuel without a valid license, it would have been incongruous for the legislature to include additional reporting requirements for those who failed to comply

with the licensing provisions. Thus, the legislature's omission in this regard can hardly be interpreted to exempt such unlicensed suppliers from the duties imposed on suppliers under the MFTL.

■■■ Under the construction of the statute urged by the plaintiff, it would be necessary for the State, after becoming aware of the plaintiff's failure to comply with the licensing requirements of the MFTL, to attempt to collect the tax due from each of the plaintiff's customers individually. This procedure would be inefficient and difficult, if not impossible, and would be contrary to a "common sense" interpretation of the statute regarding collection. While, as the plaintiff asserts, the user of the motor fuel is ultimately responsible for payment of the tax under the MFTL, the burden of collecting the tax falls upon the vendor of the fuel. (*Mitchell v. State* (1942), 12 Ill. Ct. Cl. 317; *Midland Oil Co. v. State* (1939), 10 Ill. Ct. Cl. 635; *Silver Fleet Motor Express, Inc. v. State* (1938), 10 Ill. Ct. Cl. 396.) Where such vendor fails to collect the tax at the time of sale, he is liable therefor and must pay the tax from his own funds. (*Midland Oil Co. v. State* (distributor who sold fuel on credit was responsible for payment of motor fuel taxes even though he was later unable to collect same from purchasers); see also 53 C.J.S. *Licenses* sec. 47 (1948).) The plaintiff here cannot escape this liability under a literal reading of the statute where his activities as a supplier during the period in question brought him "within the object, spirit and meaning" of the law.

Having found that the trial court did not err in affirming the Department's assessment for delinquent motor fuel taxes for the period from January 1971 through September 1974, we turn to the question of the propriety of the fraud penalty imposed upon the plaintiff for "wilful failure" to pay the amounts due. The trial court, upon review of the record, ruled that there was insufficient evidence to support the Department's finding that the plaintiff wilfully failed to pay the tax due under the MFTL. We likewise find no basis for the imposition of a fraud penalty, and we accordingly affirm the trial court's ruling.

Section 15(7) of the MFTL (Ill. Rev. Stat. 1971, ch. 120, par. 431(7)), upon which the instant penalty was based, states:

> "If any licensed distributor, licensed supplier or licensed bulk user or any other person wilfully fails to pay over to the Department the amount due under this Act on *** special fuel *** as and when it becomes payable, a penalty of 10% of the amount due shall be added, and the unpaid tax and penalty shall immediately accrue and thereafter shall bear interest at the rate of 1% per month *** until paid."

At a hearing before the Department on the matter of the plaintiff's

tax liability, James Davis, an auditor with the Department who had conducted the plaintiff's audit, testified that he had acted upon the Department's instruction in assessing a 10% fraud penalty against the plaintiff. He stated that he had had no discretion in this particular case regarding the applicability of the fraud penalty. Rather, he stated, he had inserted the fraud penalty because "[t]his was going to be a fraud case. [W]e work real close with the investigation division *** [a]nd I was instructed to make out the SC-10. I applied the 10% penalty to that based upon my understanding." When asked if he had found any indication that the plaintiff had wilfully refused to pay the tax in this case, Davis responded that it was not his responsibility to make that determination but that he personally had believed the plaintiff when the plaintiff told him he did not know he was supposed to pay the tax. The Department presented no other evidence regarding the assessment of the fraud penalty.

■■ From the record it appears that the fraud penalty was imposed against the plaintiff not because of any finding of "wilfulness" on the plaintiff's part, but because the plaintiff was also under investigation for failure to obtain a license for the period in question. Unlike section 15(1) of the MFTL (Ill. Rev. Stat. 1971, ch. 120, par. 431(1)), which contains no *scienter* requirement for the imposition of criminal penalties against one who acts as a supplier without a license or who fails to pay the tax due under the statute, section 15(7) expressly requires a finding of "wilful" failure to pay before imposition of a fraud penalty. The evidence presented by the Department was insufficient to support such a finding, and the trial court thus acted properly in vacating the fraud penalty imposed against the plaintiff under section 15(7).

For the reasons stated in this opinion, we hereby affirm the judgment of the circuit court of Jefferson County.

Affirmed.

HARRISON and KASSERMAN, JJ., concur.