(No. 48528.-

THE DEPARTMENT OF REVENUE, Appellant, v. JOSEPH BUBLICK & SONS, INC., *et al.*—(Max L. Bublick, Appellee.)

*Opinion filed November 4, 1977.*

MORAN, J., specially concurring.

William J. Scott, Attorney General, of Springfield (Paul J. Bargiel and Mary Stafford, Assistant Attorneys General, of Chicago, of counsel), for appellant.

Altheimer & Gray, of Chicago (Lionel G. Gross and Kenneth R. Gaines, of counsel), for appellee.

MR. JUSTICE DOOLEY delivered the opinion of the court:

Here the issue is whether, if a corporation is unable to satisfy its tax liability under the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 440 *et seq.*), post-judgment action must be maintained against that corporation before the individual corporate officers may be called upon to assume this liability.

The controlling statute provides:

> "Any officer or employee of any corporation subject to the provisions of this Act who has the control, supervision or responsibility of filing returns and making payment of the amount of tax herein imposed in accordance with Section 3 of this Act and who wilfully fails to file such return or to make such payment to the Department shall be personally liable for such amounts, including interest and penalties thereon, *in the event that after proper proceedings for the collection of such amounts,* as provided in said Act, such *corporation is unable to pay such amounts to the department;* and the personal liability of such officer or employee as provided herein shall survive the dissolution of the corporation." (Emphasis added.) Ill. Rev. Stat. 1973, ch. 120, par. 452½.

In 1972 the Department of Revenue audited the records of defendant Joseph Bublick & Sons, Inc., for the period of July 1969 through April 1972. This audit revealed a deficiency, and an amended return was prepared showing the corporation owed $92,342.36 in taxes, penalty, and interest. Defendant Max L. Bublick, vice-president and treasurer of the corporation during these years, signed the amended return admitting this corporate tax liability. The corporation paid $5,000 towards the amount due. It went out of business in 1974.

In 1974 an action against the corporation and the defendant officers individually was instituted to collect the deficiency. Count I of the complaint sought recovery of the taxes from the corporation. Count II, in the alternative, sought recovery of the taxes from the individual corporate officer defendants under the statute previously mentioned.

Count II alleged *inter alia* that the Department had attempted to collect the taxes from defendant Joseph Bublick & Sons, Inc., but that said defendant was "unable to pay" the amounts due. In their answer to this count the individual defendants stated that the corporate defendant was "unable to pay" the sums due and also asserted that the corporation did not have sufficient funds to pay the taxes; that during the period following the amended return it often had insufficient funds to pay existing trade creditors, and it had used such funds as it had to pay trade collectors, who, unless paid, would cause a liquidation of the corporation. This would allegedly result in a permanent inability of the corporation to discharge this obligation.

Max Bublick, sole defendant in these proceedings on appeal, was the officer responsible for filing the monthly retailers' occupation tax return and the making of payment thereon. He arbitrarily instructed Sol Garland, who did the bookkeeping for this corporation, to report only

50% of the gross receipts on the ground that 50% of the corporation sales were resales and thus not taxable. He contended that in so doing he was unaware that the Retailers' Occupation Tax Act required a report of the total of all sales with a deduction for the sales for resale for which there was proper documentation.

A casual examination of the monthly retailers' occupation tax form shows that the retailer must report the total of all sales, subtract the deductions allowed by law, such as sales for resale, and then report the "taxable receipts total," the difference between the total sales receipts and the total deductions. The method of merely listing 50% of the total receipts as those taxable obviously did not comply with the requirements of the Act.

Bublick, who had been in the retail business for many years, knew that the corporation had to file these tax returns monthly. He signed the corporate checks sent to the Department. He knew that sales for resale were not taxable and that a sales tax would be charged on sales for consumer use and not on sales for resale. He claimed lack of knowledge that the store must report the proceeds from all sales and then deduct the sales for resale. When the audit was conducted in 1972 by the Department of Revenue, no records or documentary evidence could be found to indicate that any of the store's sales were sales for resale. Accordingly, the store was assessed tax on 100% of its receipts.

The statute requires that a person engaged in selling personal property at retail shall keep books and records of all sales, together with invoices and all sales records. (Ill. Rev. Stat. 1975, ch. 120, par. 446.) It is further provided in the same section:

> "To support deductions *** on account of receipts from sales of tangible personal property for resale, *** entries in any books, records or other pertinent papers or documents of the taxpayer in relation thereto shall be in

detail sufficient to show the name and address of the taxpayer's customer in each such transaction, the character of every such transaction, the date of every such transaction, the amount of receipts realized from every such transaction and such other information as may be necessary to establish the nontaxable character of such transaction under this Act."

The store kept sales slips. From these were determined commissions for the store's salesmen. Bublick could easily have determined sales for resale and for consumer use by merely looking at the sales slips to see whether a sales tax had been paid. At the trial this experienced merchant stated that he did not realize that it could be accomplished by this method until the Department had pointed it out to him.

So also an accounting firm examined the corporation's financial records yearly and filed its Federal tax return from these records. If Bublick did not know what to do with these deductions, the trial court pointed out that it would be inconceivable that he would not ask his accountant for information. Bublick was also characterized by the trial judge as a "sophisticated, hard-nosed, street-wise businessman."

On September 25, 1974, judgment under count I was entered on the pleadings against the defendant corporation in the amount of $107,933.73 for taxes, interest and penalties. Subsequently, a trial was held on the allegations of count II. On November 25, 1974, judgment was entered against defendant Max L. Bublick in an identical sum. A separate judgment was entered in favor of the other corporate officer defendants and against the plaintiff.

On December 17, 1974, in citation proceedings, the court ordered Central National Bank of Chicago to turn over to the Department of Revenue all assets of the corporation, and to retain all Bublick's assets until further order of court.

Bublick appealed from the judgment against him

under count II. The Appellate Court for the First District, with one judge dissenting, reversed the judgment of the circuit court and entered judgment in favor of Bublick. (37 Ill. App. 3d 988.) This court granted leave to appeal pursuant to Rule 315 (58 Ill. 2d R. 315).

The appellate court held that the judgment of personal liability should not have been entered until "proper proceedings" had been instituted to collect the taxes from the corporation. (37 Ill. App. 3d 988, 992.) The proceedings referred to by the appellate court were the various summary remedies available to a judgment creditor.

There is no requirement in the statute that any post-judgment collection action be instituted against a corporation prior to the attachment of liability to the responsible officer or employee. The only condition precedent to the Department filing a suit against a corporate officer or employee under this statute for taxes owed by the corporation is that the corporation be "unable to pay" the taxes. Ill. Rev. Stat. 1973, ch. 120, par. 452½.

Here it has been admitted in the pleadings that the corporation was "unable to pay." The intelligent construction of the term "proper proceedings," as those words are used in the statute, would seem to be to determine whether the corporation is unable to pay. The language of the statute is "*** in the event that after proper proceedings for the collection of such amounts, as provided in said Act, such corporation is unable to pay such amounts," then personal liability shall attach. (Ill. Rev. Stat. 1973, ch. 120, par. 452½.) We have seen that in citation proceedings the court ordered turned over to the Department of Revenue the assets of Joseph Bublick & Sons, Inc., in its bank's possession. Upon ascertainment that the corporation is unable to pay the amounts due the Department of Revenue, the statute requiring proper

proceedings for the collection of such amounts is satisfied, and an action may be maintained against the officer or employee who is responsible for filing the return and making payment to satisfy the liability of the corporation.

In our construction of this statute, the circuit court went further than the law exacted prior to the entry of judgment against Bublick. A statute is to be reasonably interpreted according to its intent and meaning. A situation within the object, spirit and meaning of the statute falls within it, although it may be without the letter of the law. "Where the spirit and intention of the legislature in adopting the acts are clearly expressed and their objects and purposes are clearly set forth, the courts are not confined to the literal meaning of the words used, when to do so will defeat the obvious intention of the legislature and result in absurd consequences not contemplated by it." (*Harding v. Albert* (1939), 373 Ill. 94, 96-97.) Specifically, in construing statutes relating to the collection of taxes, the policy of this court has been to give them a common sense meaning so as to avoid making collection difficult or impossible. *People ex rel. Nash v. Chicago & Northwestern Ry. Co.* (1935), 359 Ill. 435, 439.

The construction placed upon this statute by the appellate court is not consonant with a reasonable interpretation to accomplish the objective of this law.

In dealing with this issue we must not be unmindful of realities. Here the corporation collects the retailers' occupation tax from its customers at the time of its sale. The retailer corporation having collected the money, the customary procedure would be to account for and make payment to the Department of Revenue.

The reason for passing on the tax liability to the responsible officers is obvious. The corporate officers could employ the funds collected for the State to pay corporate obligations as well as salaries and bonuses to

employees, and thus make recovery of the funds from a defunct corporation an impossibility. There, of course, has to be some responsibility for the stewardship of the funds collected from the public for the State.

It is urged that there is no evidence that Bublick wilfully failed to file the return or pay the tax. Bublick contends that the terms "wilfully failed" means an "intentional omission" and that there was no such evidence to support such conduct.

The Act itself (Ill. Rev. Stat. 1973, ch. 120, par. 440 *et seq.*) does not define the words "wilfully fail." However, section 6672 of the Internal Revenue Code of 1954 is similar to this statute. It, too, imposes personal liability on the corporate officer who "willfully fails to collect \*\*\* or truthfully account for and pay over" a corporate employee's social security and Federal income withholding taxes. Both statutes impose liability for the tax on the responsible officer.

The cases arising under this Federal statute are of assistance here. According to them, wilful failure means a voluntary, conscious and intentional failure to pay the taxes. (*Newsome v. United States* (5th Cir. 1970), 431 F.2d 742, 745; *White v. United States*(U.S. Ct. Cl. 1967), 372 F.2d 513, 521.) As was observed in *Monday v. United States* (7th Cir. 1970), 421 F.2d 1210, *cert. denied* (1970), 400 U.S. 821, 27 L. Ed. 2d 48, 91 S. Ct. 38, in a civil action wilful conduct "denotes intentional, knowing and voluntary acts. It may also indicate a reckless disregard for obvious or known risks." 421 F.2d 1210, 1215.

In Illinois law the term "wilful" has a variety of meanings. In the Criminal Code of 1961 the terms "wilful" and "wilfully" have largely been eliminated. (See Ill. Ann. Stat., ch. 38, par. 4—3, Committee Comments.) Instead, criminal offenses are defined with reference to the four mental states enumerated in sections 4—4, 4—5, 4—6, and 4—7. One of these states is knowledge. Section 4—5 states:

"Conduct performed knowingly or with knowledge is performed wilfully, within the meaning of a statute using the latter term, unless the statute clearly requires another meaning." Ill. Rev. Stat. 1975, ch. 38, par. 4—5.

It is our opinion that a voluntary, conscious and intentional failure satisfies the requirements of "wilfully fail," as those words are used in this particular act. Whether an employee or officer knowingly, voluntarily and intentionally fails to make this payment is an issue of fact to be determined by the trier of the fact on the basis of the circumstances and evidence adduced in the particular case. Here there was ample evidence to justify a finding that the defendant wilfully failed in his statutory obligation.

The judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed; circuit court affirmed.*

MR. JUSTICE MORAN, specially concurring:

The majority's interpretation of section 13½ of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 452½) has, in my opinion, excised one of the key provisions of the section, that being the effect of the words "after proper proceedings for the collection of such amounts, as provided in said Act." The Act provides for proper proceedings, which include suit by the Department for a judgment against the corporation and the execution of such judgment (Ill. Rev. Stat. 1973, ch. 120, par. 444), or issuance of a tax lien (Ill. Rev. Stat. 1973, ch. 120, par. 444a) and enforcement of said lien (Ill. Rev. Stat. 1973, ch. 120, pars. 444e, 444f), together with, according to the last two cited sections, all remedies otherwise available to a judgment creditor.

Generally, officers or employees of a corporation are not individually liable for the debts or tax obligations of the corporation, but, by enacting section 13½, the

legislature excepted this general rule as it applies to the collection of the retailers' occupation tax. A reading of that section, quoted in the majority opinion, clearly indicates the legislative intent to prevent abuse of the exception by providing two safeguards for the officer or employee against whom the corporation's tax might, under the exception, be imposed: (1) The Department must first institute proper proceedings (as stated above) against the corporation and its assets for the collection of the tax and, after a determination that the corporation is unable to pay the tax, then (2) the Department must prove that the officer or employee having control, supervision, or responsibility for the filing and payment of the tax due willfully failed to file such return or make such payment. (I concur with the majority's finding that the Department, in the instant case, met its burden in this last regard.)

The two conditional safeguards are, in effect, rights granted by the legislature for the protection of an officer or employee. Under my interpretation of the statute, the protection of those rights would normally have made it necessary for the Department to follow through, by proper proceedings outlined above, to collect the judgment against the corporation (if only to determine that the corporation was unable to pay). Bublick, however, by his admission that the corporation was unable to pay, waived his protective right and relieved the Department of the obligation to proceed further to determine that which was already admitted.