THE DEPARTMENT OF REVENUE, Plaintiff-Appellant, *v.* MARION SOPKO, INC., *et al.*, Defendants-Appellees.

Second District   No. 79-522

Opinion filed June 4, 1980.

William J. Scott, Attorney General, of Chicago (Joseph D. Kennan, III, Assistant Attorney General, of counsel), for appellant.

Richard J. Short, of Chicago, for appellees.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

The Illinois Department of Revenue appeals from a judgment absolving the defendant, Irwin Malman, of liability for the tax deficiency

of Marion Sopko, Inc., for the period of January 1969 through June 1974 and specifically challenges the court's finding that Irwin Malman did not wilfully fail to pay taxes due under the Illinois Retailers' Occupation Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 440 *et seq.*) during this 5½-year period.

The basic facts underlying this cause are not in dispute. In 1969 or 1970 Irwin Malman received a notice of tax liability against Marion Sopko, Inc., a corporation engaged in the retail liquor business, which he wholly owned and over which he exercised exclusive control in his capacities as president and treasurer. After receiving this notice, he immediately contacted the accountant who prepared the retailers' occupation tax returns for the corporation. Malman testified that the accountant told him not to worry about it because he would take care of the matter, that he was not subsequently contacted by the accountant regarding the delinquency matter, that he assumed the accountant had taken care of the problem and that he made no further inquiry regarding whether the tax liability matter had been resolved. He continued to sign the tax returns which were prepared by the corporation's accountant and to make monthly payments in the amounts which the accountant indicated were owed to the Department of Revenue. Malman further stated that he had no reason to believe that a tax deficiency was developing during this period.

In March of 1976 the Department of Revenue initiated proceedings to collect the delinquent taxes, penalties and interest from the defendant corporation. After negotiations between the Department and Mr. Malman failed to produce concrete results regarding payment of the deficient tax assessments, the Department issued a statutory 10-day notice on June 24, 1976, informing the corporation that it intended to seize its assets if an acceptable payment plan was not entered into within ten days. Subsequently, sometime in late June 1976 the entire business of Sopko was transferred to Renee Liquors, Inc. The sole stockholder and president of Renee Liquors was Renee Malman, the wife of Irwin Malman. She was also the secretary and one of the directors of Marion Sopko, Inc. Additional attempts by the Department of Revenue to collect the outstanding tax assessments from the now-defunct corporation proved fruitless. A subsequent audit of Marion Sopko, Inc., by the Department indicated that there were no remaining assets with which to satisfy the outstanding tax liability.

The Department of Revenue filed an action against Marion Sopko, Inc., and against Irwin and Renee Malman, in their capacities as officers and stockholders of the corporation, for wilful failure to file tax returns and make payment of tax assessments due the Department. The trial court entered judgment on count I in favor of the plaintiff and against the

defendant corporation in the amount of $248,427.69. After a bench trial, the court found, with respect to count II, that there was no evidence that Irwin and Renee Malman had wilfully failed to file returns or make the appropriate tax payments and accordingly determined that they were not personally liable under section 13½ of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 452½) for the taxes, interest and penalties owed by the corporation for the period of January 1969 through June 1974. However, the court held that regarding the months of January, March, April and June 1976 Irwin Malman voluntarily, consciously and intentionally failed to file timely tax returns and make payments of the taxes due in violation of section 13½ of the Act and entered judgment against him in the amount of $7,196.95. The trial court denied the plaintiff's post-judgment motion requesting the court to reconsider its decision concerning the period of January 1969 through June 1974. Irwin Malman is the sole defendant in these proceedings on appeal.

The sole issue presented for review is whether the trial court's finding that Irwin Malman did not wilfully fail to pay the taxes owed by Marion Sopko, Inc., under the Illinois Retailers' Occupation Tax Act is against the manifest weight of the evidence.

Section 13½ of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 452½) imposes personal liability on an officer or employee of a corporation who had the control, supervision and responsibility of filing tax returns and making tax payments and who wilfully failed to do so. This section imposes personal liability in the event that, after proper proceedings for collection of such amounts, the corporation is unable to pay the tax. At issue here is whether the defendant's failure to pay the full amount of the retailers' occupation tax was "wilful."

The Act itself does not define the words "wilfully fail." However, in *Department of Revenue v. Joseph Bublick & Sons, Inc.* (1977), 68 Ill. 2d 568, our supreme court considered and decided what form of conduct constitutes a wilful failure to pay taxes under section 13½ of the Retailers' Occupation Tax Act. There the court stated that "a voluntary, conscious and intentional failure satisfies the requirements of 'wilfully fail,'" as those words are used in the Act. The court further stated that whether an officer or employee intentionally, knowingly or voluntarily fails to make the required payment is an issue of fact to be resolved by the trier of fact based on the circumstances and evidence in the particular case. 68 Ill. 2d 568, 577.

In its memorandum of judgment the trial court, after hearing the testimony, observing the witnesses and weighing the evidence, determined that there was no evidence demonstrating that the defendant consciously, voluntarily, intentionally, knowingly or recklessly failed to make the appropriate retailers' occupation tax payments. The court

pointed out, and the evidence supports its observations, that the defendant provided the accountant with certain check-out sheets which included a compilation of the daily receipts and expenditures of the corporation, that the defendant relied on the accountant to prepare the monthly sales tax return which Malman then signed, and that throughout the period in question the defendant issued a monthly check to the State for the amount shown due on the return. The court specifically found that there was no intentional plan to underreport the receipts of the business and that there was, in fact, no evidence establishing the cause of the deficiency. In addition, the record indicates that, although the defendant acknowledged receiving in 1969 or 1970 a notice that the returns he had filed and the taxes he had paid on behalf of the corporation for 1969 were deficient, no evidence was presented to establish or suggest either that the defendant was aware that this deficiency had not been corrected by the corporation's accountant or that he was cognizant subsequent deficiencies had occurred prior to being so notified by the Department of Revenue early in 1976.

■■■ It is well established that this court cannot interfere with the findings of the trial court, unless we can say that its holding is against the manifest weight of the evidence, since the trial judge as the trier of fact is in a superior position to hear and weigh the evidence and determine the credibility of the witnesses. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356; *Wainwright v. Lyons* (1979), 73 Ill. App. 3d 1043, 1045; *Ross v. Steiner* (1978), 66 Ill. App. 3d 567, 572; *Glass v. Peitchel* (1978), 63 Ill. App. 3d 57, 61.) We are not free, as reviewing judges, to reweigh the evidence, and only when there is an absence of probative facts to support a conclusion reached does reversible error appear. (*Glass v. Peitchel* (1978), 63 Ill. App. 3d 57, 61; *Schaefer v. Checker Taxi Co.* (1976), 41 Ill. App. 3d 32, 37.) Given the facts and circumstances of this case, we cannot say that the trial court's finding that the defendant did not wilfully fail to pay the full amount of the retailers' occupation tax owed by law is against the manifest weight of the evidence. There is ample evidence in the record to support the trial court's conclusion. We emphasize that this is not a case where the defendant instructed the accountant to prepare false or incomplete returns or knew that incorrect returns were still being prepared after he was notified by the Department of Revenue regarding the initial tax deficiency. The evidence shows that the defendant immediately turned the deficiency assessment over to the corporation's accountant after receiving the department's initial deficiency notification and thereafter relied upon the accountant to correct the deficiency and resolve the matter. We are satisfied that the evidence in this case demonstrates that, for the period of January 1969 through June 1974, the defendant's conduct did not

constitute a voluntary, conscious and intentional failure to pay the retailers' occupation tax.

We also agree with the trial court and the defendant that the case at bar is not controlled by the result the court reached in *Department of Revenue v. Joseph Bublick & Sons, Inc.* (1977), 68 Ill. 2d 568. As the trial judge pointed out in his memorandum of judgment, the facts and circumstances before the supreme court in *Bublick* are distinguishable from those now before this court.

Accordingly, we affirm the judgment of the circuit court of Lake County.

Affirmed.

SEIDENFELD, P. J., and NASH, J., concur.