THE DEPARTMENT OF REVENUE *ex rel.* THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CORROSION SYSTEMS, INC., Defendant (Marshall Fisk, Defendant-Appellant).

Fourth District   No. 4—88—0793

Opinion filed July 18, 1989.

Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield (Stephen R. Kaufmann and Michael C. Connelly, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE LUND delivered the opinion of the court:

The Illinois Department of Revenue (Department) filed a complaint against Corrosion Systems, Inc. (Corrosion Systems), and its

principal financial officer, Marshall Fisk, requesting the payment of unpaid taxes, due under the Use Tax Act (Ill. Rev. Stat. 1987, ch. 120, pars. 439.1 through 439.22). A judgment was entered against the corporation, but the corporation was found to be insolvent. The Department then sought payment from Fisk. The Department filed a motion for summary judgment, which was granted by the circuit court of Sangamon County. Fisk appeals.

The facts are not in dispute. Corrosion Systems is a Missouri corporation making retail sales to Illinois customers. Corrosion Systems registered as a voluntary compliance tax collector of use taxes with the Department, thereby obligating itself to collect use taxes for the State of Illinois. The Department performed an audit of Corrosion Systems' books and records for the period of January 1977 through April 1980. A notice of tax liability was issued on June 18, 1980, in the amount of $21,724.08, representing tax deficiencies and delinquencies, penalties, and interest due through June 30, 1980. An administrative hearing was held at the corporation's request, after which the Department issued a revised final assessment showing a total due through May 31, 1982, of $27,109.38. On June 8, 1984, the Department filed the complaint in the instant case to collect the final assessment from the corporation and Fisk. On April 8, 1986, a judgment was entered by the circuit court against the corporation in the amount of $42,149.29. No appeal was taken from that judgment.

The Department then pursued its remedy against Fisk. In his responses to the Department's requests for admissions, Fisk acknowledged that the corporation was defunct and unable to pay the judgment against it; that Fisk was a stockholder, director, vice-president, and secretary of the corporation during the period from January 1977 through April 1980; that during the same period, Fisk did withdraw funds from the corporation's bank account and pay debts and/or bills owed by the corporation to its various creditors; that the corporation had charged and collected Illinois taxes "when they were due," although Fisk believed "most were tax exempt." Fisk knew of and had failed to satisfy the Department's claim against the corporation. Although Fisk denied that he had prepared the corporation's tax returns, the signature of "M. Fisk" appears on three such returns filed on behalf of the corporation. In further requests for admissions, Fisk did not deny that he was authorized to, and did, in fact, sign those returns. On October 5, 1988, the circuit court allowed the Department's motion for summary judgment against Fisk.

Fisk argues summary judgment should not have been granted the Department on the facts of this case. He argues the record does not

conclusively show he *wilfully* failed to pay the taxes that were assessed against Corrosion Systems.

█ The focus of this appeal is on section 13½ of the Retailers' Occupation Tax Act (Act) (Ill. Rev. Stat. 1979, ch. 120, par. 452½). Although the instant case involves use taxes, section 12 of the Use Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 439.12) incorporates section 13½ of the Act. Section 13½ of the Act (Ill. Rev. Stat. 1979, ch. 120, par. 452½) allows the Department to collect taxes owed by a corporation from a responsible corporate officer should the corporation be unable to make payment:

> "Any officer or employee of any corporation subject to the provisions of this Act who has the control, supervision or responsibility of filing returns and making payment of the amount of tax herein imposed in accordance with Section 3 of this Act and who *wilfully fails* to file such return or to make such payment to the Department shall be personally liable for such amounts, including interest and penalties thereon, in the event that after proper proceedings for the collection of such amounts, as provided in said Act, such corporation is unable to pay such amounts to the department; and the personal liability of such officer or employee as provided herein shall survive the dissolution of the corporation." (Emphasis added.)

Case law has given a broad interpretation to the words "wilfully fails." In *Department of Revenue v. Joseph Bublick & Sons, Inc.* (1977), 68 Ill. 2d 568, 577, 369 N.E.2d 1279, 1283, the supreme court stated a wilful failure under section 13½ of the Act was a voluntary, conscious, and intentional failure. In *Department of Revenue v. Heartland Investments, Inc.* (1985), 106 Ill. 2d 19, 30, 476 N.E.2d 413, 418, the supreme court appeared to adopt the Federal standard that "in a civil action, wilful conduct does not require bad purpose or intent to defraud the government."

█ It is clear that where the corporation collects taxes while doing business, but the moneys are spent on other corporate obligations, the courts will find a wilful failure to pay taxes. In *Heartland*, the supreme court held that a corporate financial officer was liable, as a matter of law, for the unpaid corporate taxes when the taxes were collected but the moneys were applied to other business debts in an effort to save the business from dissolution. *Heartland*, 106 Ill. 2d at 30, 476 N.E.2d at 418.

According to Fisk, the instant case involves a significantly different factual situation. Fisk argues that the record does not show the taxes were ever collected by Corrosion Systems. Fisk states that the

corporation did not collect the taxes because the transactions were believed tax exempt. Since the moneys were never collected, were never available to the corporation, and were not spent on other corporate obligations, Fisk argues the Department cannot show, as a matter of law, that he wilfully failed to pay the tax. The tax liability consisted of tax deficiencies and tax delinquencies. Fisk argues that wilfulness was not shown, as a matter of law, for the deficiencies because they represent moneys not collected from the general public. Fisk also argues the Department did not establish the tax delinquencies represent sums that were actually collected.

Fisk relies on two cases for support. (*Department of Revenue v. Joseph Bublick & Sons, Inc.* (1977), 68 Ill. 2d 568, 369 N.E.2d 1279; *Department of Revenue v. Marion Sopko, Inc.* (1980), 84 Ill. App. 3d 953, 406 N.E.2d 188.) In *Bublick*, a trial was held concerning the corporate officer's alleged tax liability. The officer had instructed his bookkeeper to report only 50% of the gross receipts because the officer concluded 50% of the corporation's sales were resales and not taxable. The officer stated he was unaware that the Act required a report of all sales, with a deduction for properly documented resales. The correct procedure was clearly set out on the monthly tax forms. In addition, other avenues were available for properly determining the tax. Following the audit, the Department found no documentation of resales and assessed taxes on 100% of sales. The trial court found against the corporate officer. The supreme court affirmed and, in its opinion, first discussed the wilfulness standard. The court stated:

> "It is our opinion that a voluntary, conscious and intentional failure satisfies the requirements of 'wilfully fail,' as those words are used in this particular act. Whether an employee or officer knowingly, voluntarily and intentionally fails to make this payment is an issue of fact to be determined by the trier of the fact on the basis of the circumstances and evidence adduced in the particular case. Here there was ample evidence to justify a finding that the defendant wilfully failed in his statutory obligation." *Bublick*, 68 Ill. 2d at 577, 369 N.E.2d at 1283.

In *Marion Sopko*, the second district affirmed a trial court's findings, after a bench trial, that a corporate officer did not wilfully fail to pay taxes. The corporate officer testified that he relied totally on the corporation's accountant to handle the preparation of tax reports and payments. When a notice of tax liability was received, the officer turned it over to the accountant, who assured the officer that the matter would be properly handled. The trial court concluded that the officer had relied on his accountant, and there was no evidence "that

the defendant consciously, voluntarily, intentionally, knowingly or recklessly failed to make the appropriate retailers' occupation tax payments." (*Marion Sopko*, 84 Ill. App. 3d at 955, 406 N.E.2d at 190.) The evidence indicated all of the financial information was given to the accountant who prepared the returns. The corporate officer prepared checks to the Department for the amounts shown on the returns. The appellate court upheld the trial court's findings on the ground that they were not against the manifest weight of the evidence. The court specifically noted the facts were distinguishable from those in *Bublick. Marion Sopko*, 84 Ill. App. 3d at 957, 406 N.E.2d at 190.

Fisk argues these cases support the argument that not every tax liability results from a corporate officer's wilful failure to make the required tax payments. In certain circumstances, a trial is required to determine the corporate officer's liability. Fisk argues the instant case requires a trial in order to establish his wilfulness. Both *Bublick* and *Marion Sopko* were cases where an insufficient amount of taxes was collected, and trials were held to determine the officer's liability.

The Department argues Fisk's mistaken belief that the business transactions were exempt and the resulting failure to collect the taxes on those transactions are not grounds for finding the failure to pay nonwilful. The Department cites to Federal cases for the proposition that "[a] mistaken belief on the part of the responsible person that the tax need not or cannot be paid over does not suffice to render the failure to pay nonwilful." *Teel v. United States* (9th Cir. 1976), 529 F.2d 903, 906.

A review of the Federal cases indicates the Department has removed this principle of law from its proper context. All of the Federal cases cited by the Department involve situations where the taxes were collected by the corporation, or not collected but accurately reported on the corporation's returns. However, the taxes were never remitted to the government. (*Teel*, 529 F.2d 903; *Pacific National Insurance Co. v. United States* (9th Cir. 1970), 422 F.2d 26; *Alioto v. United States* (N.D. Cal. 1984), 593 F. Supp. 1402.) The corporate officers were told that because of bankruptcy, or for some other reason, the collected taxes need not be paid to the government. These mistaken ideas were not sufficient to free the corporate officers from a finding of a wilful failure to pay. None of the cases involved a mistaken belief that the taxes were not owed.

■ There is support in the Federal sector for excusing personal liability on the ground of mistaken belief of whether the tax was owed. "[N]o showing of evil motive or intent to defraud the United

States is required [citation]; but, it must be shown that the responsible officer knew the taxes were due." (*Alioto*, 593 F. Supp. at 1406.) In *Alioto*, a corporate officer argued, among other things, that he was simply unaware that taxes were due on a certain date. While finding a factual dispute as to what the officer actually knew, the court stated: "If [the officer] was not aware that the taxes were due, then he would be entitled to prevail as a matter of law." (*Alioto*, 593 F. Supp. at 1407.) Apparently, the rule under Federal law is that the government must show the officer knew the taxes were due in order to establish wilfulness. We consider the rule based on reason and now adopt it.

We conclude the trial court improperly granted summary judgment. There should be a trial on the issue as to whether Fisk knew or should have known that the sales, which generated the tax liability, were not exempt from the Illinois tax.

Reversed and remanded.

KNECHT and SPITZ, JJ., concur.