678 N.E.2d 1070 (1997)
287 Ill. App.3d 552
223 Ill.Dec. 62
In the Interest of V.Z., P.R., T.R., M.R., J.R., Minors-Respondents-Appellees.
The PEOPLE of the State of Illinois, Petitioner-Appellee,
v.
M.Z. and J.R., Sr., Respondents-Appellants.
No. 1-95-3020.
Appellate Court of Illinois, First District, Third Division.
March 31, 1997.
*1071 Rita A. Fry, Public Defender of Cook County, Chicago (Thomas F. Finegan, of counsel), for Respondents-Appellants.
Jack O'Malley, State's Attorney, Chicago (Renee Goldfarb, Kenneth T. McCurry, Nancy L. Grauer, of counsel), for Petitioner-Appellee.
Patrick T. Murphy, Ron Fritsch, Office of the Cook County Public Guardian, Chicago, for Minors-Appellees.
Justice GORDON delivered the opinion of the court:
M.Z. and J.R. Sr. appeal from the trial court order adjudicating V.Z., P.R., T.R., M.R. and J.R. wards of the court and from the dispositional order continuing custody of P.R., T.R., M.R. and J.R. with M.Z. and J.R. Sr. under an order of protective supervision. At the conclusion of the adjudicatory hearing, the trial court found that V.Z. had been sexually abused by J.R. Sr., her stepfather.[1] See 705 ILCS 405/2-3(2)(iii) (West 1992). The court further found that V.Z. was abused or neglected by M.Z. and J.R. Sr. based upon evidence showing lack of care, injurious environment, and substantial risk of physical injury. See 705 ILCS 405/2-3(1)(a) (lack of care), 3(1)(b) (injurious environment), 3(2)(ii) (substantial risk/physical injury) (West 1994). With respect to P.R., T.R., M.R., and J.R., the court made findings of abuse and neglect by M.Z. and J.R. Sr. based upon evidence showing the existence of an injurious environment resulting from the sexual abuse of V.Z. See 705 ILCS 4-5/2-3(1)(b) (West 1992).
On appeal, M.Z. and J.R. Sr. argue that the petitions for adjudication of wardship should have been dismissed because the adjudicatory hearing was held beyond the time limits of section 2-14 of the Juvenile Court Act of 1987 (the Juvenile Court Act) (705 ILCS 405/2-14 (West 1992)). They also argue that they were unfairly prejudiced at the adjudicatory hearing when the judge allowed non-expert opinion testimony concerning an ultimate issue in the case.
The facts relevant to the timeliness of the adjudicatory hearing show that on July 23, 1993 petitions for adjudication of wardship were filed with respect to V.Z., P.R., T.R., M.R. and J.R. A temporary custody hearing was held that day. On the next court date, October 25, 1993, V.Z.'s natural father, T.G., who had been served by publication, was defaulted for want of appearance or answer. *1072 The court set the adjudicatory hearing for December 21, 1993. On that date, the assistant public defender, who was representing M.Z. and J.R. Sr., requested a continuance; and the cause was continued by agreement and pursuant to court order to July 11, 1994. Further continuances by agreement were granted by court order on July 11, 1994 to July 29, 1994 and on July 29, 1994 to October 25, 1994. On October 25, 1994, M.Z. and J.R. Sr. stated they were ready to proceed to adjudicatory hearing, and the cause was continued by agreement to December 5, 1994. An order dated December 5, 1994 shows that the adjudicatory hearing was further continued by agreement of all the parties to January 30, 1995, although a line was drawn through that date and the date of December 20, 1994 was written above it. The transcript of that hearing, which does not identify the individuals who were present, discloses the following colloquy:
"THE COURT: Give the dates on those other cases that are being continued. UNIDENTIFIED VOICE: The [Z.] and [P.R., T.R., M.R. and J.R. Jr.] case, 93 JA 3440 and 93 JA 3449-52 is being continued to January 30th, 1995, for trial."
On December 21, 1994, M.Z. and J.R. Sr. filed a "Motion to Dismiss." In that motion they made the following excerpted allegations regarding the December 5, 1994 order of continuance:
"6. On December 5, 1994, the court was not in session.
7. The original continuance date was January 30, 1995.
8. The public defender's office, on behalf of the parents, requested a sooner date to comply with the 30 day time limit of the statute.
9. The trial was set for December 20, 1994.
10. On December 19, 1994, the public guardian's office informed the assistant public defender assigned to the case that she was unaware that the date had been changed and would not be ready for trial on December 20, 1994."
M.Z. and J.R. Sr. requested that the petitions for adjudication of wardship be dismissed or "in the alternative" that a trial date be set "within 30 days from December 5, 1994 to comply with the statute."
On December 23, 1994, at the hearing on the motion to dismiss, the assistant public guardian, who was representing the minors, reiterated the agreement of the parties on December 5, 1994 to continue trial to January 30, 1995. In this regard she stated:
"Your Honor, if I can clarify for the record, the initial date that was set, agreed upon by all the parties, including Guardian of record, Sherry Fox, was for January 30th.
Apparently the date was changed after that without notifying her. Yes, Mr. Mondairo was notified and told Ms. Fox if she had any problem to notify the parties.
Ms. Fox, the next day came down, notified the court, indicated that she would, of course, be out-of-town [sic] that date, and that the original court date that was set, January 30th with all parties present, should stand. And the court order reflected that was the original date that was going to be set."
The court did not make any finding regarding the hearing date change from December 20, 1994 to January 30, 1995. It denied the motion to dismiss but entered an order "[o]n motion of the Public Guardian" continuing the trial date to January 18, 1995.
At the hearing on January 18, 1995, the assistant state's attorney and the assistant public defender stipulated that, if called to testify, M.Z. would state that she was unable to take care of V.Z. The assistant state's attorney asked for a finding of neglect as to V.Z. and indicated that she would not then proceed on the sexual abuse allegation involving V.Z. or the injurious environment allegations involving P.R., T.R., M.R. and J.R. Based upon the stipulated testimony, the trial court found that V.Z. was a neglected minor. Thereafter, the assistant public defender moved for directed findings in favor of M.Z. and J.R. Sr. on the remaining issues of sexual abuse as to V.Z. and injurious environment as to P.R., T.R., M.R. and J.R. The trial court continued the parents' motion for directed findings and requested that the parties submit memoranda on the propriety *1073 of the State's election not to proceed. The order entered on January 18, 1995 indicated that trial was continued to February 24, 1995 by agreement of the parties.
On February 24, 1995 the trial court denied without prejudice the parents' motion for directed finding indicating that the petitions could not be dismissed without a determination of whether the dismissal of the petitions was in the best interest of the children. The parties agreed to waive the "best interest" hearing and to proceed to trial on the merits of the petitions with the public guardian's office assuming the burden of proof of the allegations in the petitions. Trial was continued by agreement of the parties to April 4, 1995.
On April 4 and 5, 1995 testimony was offered by the parties. On April 10, 1995, by order and agreement of the parties, the trial was continued to May 15, 1995. On May 15, 1995, testimony was concluded, and the parties made closing arguments. The matter was continued by agreement of the parties and order of the court to May 24, 1995 for decision. On May 24, 1995 the judge made written findings that V.Z. was abused or neglected based upon lack of care, injurious environment, substantial risk of physical injury and sexual abuse and that P.R., T.R., M.R., and J.R. were abused or neglected based upon the existence of an injurious environment. See 705 ILCS 405/2-3(1)(a) (lack of care), 3(1)(b) (injurious environment), 3(2)(ii) (substantial risk/physical injury), 3(2)(iii) (sexual abuse) (West 1992). On August 21, 1995 the trial court terminated V.Z.'s wardship pursuant to the State's motion.[2] On that same date, the court ordered that P.R., T.R., M.R., and J.R. Jr. remain in the custody of M.Z. and J.R. Sr. subject to an order of protective supervision and continued the matter to February 5, 1996. M.Z. and J.R. Sr. filed their notice of appeal on August 21, 1995.
The statute that governs the first issue in the instant appeal, namely, the timeliness of the adjudicatory hearing, is section 2-14 of the Juvenile Court Act. That section provides:
"(a) Purpose and policy. The legislature recognizes that serious delay in the adjudication of abuse, neglect, or dependency cases can cause grave harm to the minor and the family and that it frustrates the best interests of the minor and the effort to establish permanent homes for children in need. The purpose of this Section is to insure that * * * the State of Illinois will act in a just and speedy manner to determine the best interests of the minor * * *.
(b) When a petition is filed alleging that the minor is abused, neglected or dependent, an adjudicatory hearing shall be held within 90 days of the date of service of process upon the minor, parents, any guardian and any legal custodian.
(c) Upon written motion of a party filed no later than 10 days prior to hearing, or upon the court's own motion and only for good cause shown, the Court may continue the hearing for a period not to exceed 30 days, and only if the continuance is in the best interests of the minor. When the court grants a continuance, it shall enter specific factual findings to support its order, including factual findings supporting the court's determination that the continuance is in the best interests of the minor. Only one such continuance shall be granted. A period of continuance for good cause as described in this Section shall temporarily suspend as to all parties, for the time of the delay, the period within which a hearing must be held. On the day of the expiration of the delay, the period shall continue at the point at which it was suspended.
The term `good cause' as applied in this Section shall be strictly construed and be in accordance with Supreme Court Rule 231(a) through (f). Neither stipulation by counsel nor the convenience of any party constitutes good cause. If the adjudicatory hearing is not heard within the time limits required by section (b) or (c) of this Section, upon motion by any party the *1074 petition shall be dismissed without prejudice.
(d) The time limits of this Section may be waived only by consent of all parties and approval of the court." 705 ILCS 405/2-14 (West 1992).
M.Z. and J.R. Sr. contend that section 2-14 should be given a mandatory construction such that dismissal of the petitions is warranted if the 90-day time limit provided therein has been exceeded. They further argue that, under the facts herein, dismissal is warranted because the adjudicatory hearing was not commenced until April 4, 1995, 18 months after service of process, and because the adjudicatory decision was not rendered until May 24, 1995, 19 months after service of process.
The State and the Public Guardian argue that section 2-14 should be given a directory construction. They alternatively argue that even if that provision is given a mandatory construction, the petitions in the instant case should not be dismissed because M.Z. and J.R. Sr. waived the time limits of section 2-14 by requesting and/or agreeing to continuances that extended the time of the adjudicatory hearing beyond the 90-day period. See 705 ILCS 405/2-14(d) (West 1992).
M.Z. and J.R. Sr. are correct in their contention that the time limits of section 2-14 are mandatory. If the adjudicatory hearing is not completed within 90 days of service of process, or within 120 days where a good cause continuance has been granted, the petition must be dismissed without prejudice. In re S.G., 175 Ill.2d 471, 222 Ill.Dec. 386, 677 N.E.2d 920 (1997). As pointed out in the intermediate opinion of In re S.G., 277 Ill.App.3d 803, 214 Ill.Dec. 583, 661 N.E.2d 437 (1996), the mandatory nature of that limitation reflects the fact that any resulting dismissal would be without prejudice.
It also is manifest from the face of section 2-14 that the parties can waive the statutory time limits provided therein. Subsection (d) of that provision specifically states: "[t]he time limits of this Section may be waived only by consent of all parties and approval of the court." 705 ILCS 405/2-14(d) (West 1992). We are aware of no case to apply the waiver provision under the statutory scheme before us. In In re S.G., 175 Ill.2d 471, 222 Ill.Dec. 386, 677 N.E.2d 920 (1997), our supreme court recognized the existence of the waiver provision but did not find a waiver under the facts before it because the minor's mother had repeatedly voiced frustration at the slow pace of adjudicatory proceedings and had repeatedly expressed her desire for quick completion of the proceedings.
In In re Jackson, 243 Ill.App.3d 631, 183 Ill.Dec. 708, 611 N.E.2d 1356 (1993), the court applied a predecessor time limit statute which had a waiver provision identical to the one at bar and found that a waiver had occurred. Compare Ill.Rev.Stat.1989, ch. 37, par. 802-14(d) with 705 ILCS 405/2-14(d) (West 1992). In Jackson, the 120-day time period, then in force, would have run on August 22, 1989.[3] See Ill.Rev.Stat.1989, ch. 37, par. 802-14(b). However, on June 15, 1989, the mother filed a motion for a transcript; and on August 14, 1989, she filed a request for production. Her motions were granted and the adjudicatory hearing was continued. The mother then moved to dismiss the proceedings on March 30, 1990; and the motion was denied on May 25, 1990. The adjudicatory hearing was held on March 22, 1991. Affirming the denial of the motion to dismiss, the court stated:
"We do not think appellant can complain of delays which she occasioned. Section 2-14(d) provides that the time limits established in section 2-14 may be waived by consent of all parties and approval of the court. We find that this is precisely what occurred in the instant case. By repeatedly filing motions requiring extensions of the 120-day time limit, appellant effectively waived that time limit. By rescheduling the adjudicatory hearing to accommodate appellant, the court approved the waiver of the time limit. * * * We note that the adjudicatory hearing was originally scheduled within the 120-day time limit. The trial court did not err in denying appellant's motions to dismiss * * *." 243 Ill. *1075 App.3d at 648, 183 Ill.Dec. at 719-20, 611 N.E.2d at 1367-68.
Here, the 90-day period began to run on October 27, 1993 when V.Z.'s father was defaulted after publication notice. See 705 ILCS 405/2-14(b); In re S.G., 175 Ill.2d at 483, 222 Ill.Dec. at 392, 677 N.E.2d at 926 (the date of default is the starting date for the 90-day statutory period). The first trial date, December 21, 1993, was set to occur on day 54 of the 90-day time period. On December 21st, however, the parents requested a continuance; and the hearing was continued to July 11, 1994 by agreement of the parties and upon approval of the court. Additional continuances by agreement of the parties were granted by the court on July 11, 1994 to July 29, 1994 and on July 29, 1994 to October 25, 1994. On October 25, 1994, M.Z. and J.R. Sr., through their attorney, an assistant public defender, indicated that they were ready to proceed to trial and requested the "soonest possible trial date." The assistant public guardian, who was representing the minors, requested a month's continuance. The trial court suggested the date of December 5, 1994 and specifically asked the parents' counsel whether she was in agreement with that date. The assistant public defender responded, "That's fine, Judge." The order to continue the trial to December 5, 1994 indicated that it was by agreement of the parties. Thus, since during the period of December 21, 1993 through December 5, 1994 all of the continuances were by agreement of the parties and upon approval of the court, the transpired time for purposes of the 90-day time limit remained at 54 days.
There is some uncertainty as to the next continuance that was granted on December 5, 1994. As discussed above, the transcript for that date, which does not identify the individuals who were present, shows that an "unidentified voice" indicated that the trial was being continued to January 30, 1995. The written order entered on December 5, 1994 also indicates that the trial date was continued to January 30, 1995 by agreement of the parties. However, that order also shows that a line was drawn through the date of January 30, 1995 and that the date of December 20, 1994 was written above it. At the December 23, 1994 hearing on the parents' motion to dismiss, the assistant public defender indicated that she had requested, after the date was set to January 30, 1995, that the date be set back to December 20 and that the State's Attorney's Office and the Public Guardian's Office were subsequently notified of that change. The assistant public guardian responded:
"Your Honor, if I can clarify for the record, the initial date that was set, agreed upon by all the parties, including Guardian of record, Sherry Fox, was for January 30th.
Apparently the date was changed after that without notifying her. Yes, Mr. Mondairo was notified and told Ms. Fox if she had any problem to notify the parties.
Ms. Fox, the next day came down, notified the court, indicated that she would, of course, be out-of-town [sic] that date, and that the original court date that was set, January 30th with all parties present, should stand. And the court order reflected that was the original date that was going to be set."
What appears to have occurred is that all of the parties agreed to the original continuance date of January 30, 1995 and that sometime later the assistant public defender unilaterally sought a date change without prior notice to the other parties and without their prior consent. Given these facts, argument can be made that for purposes of counting the 90-day time period that the original agreed upon date of January 30, 1995 should stand. However, we need not decide that question because, in any event, there was no disagreement to extend the trial date to at least December 20, 1994. Including the days of December 20 through December 23, 1994 as well as the period of December 23, 1994 through January 18, 1995, the continuance granted on motion of the public guardian, would increase the count by 29 days to 83 days.
Trial commenced on January 18, 1995 at which time the court made a finding of neglect with respect to V.Z. pursuant to the stipulated testimony of her mother. By order of the court and agreement of the parties *1076 the hearing was continued to February 24, 1995; and from February 24, 1995 to April 4, 1995. During these continuances, the count remained at 83 days. Testimony was taken on April 4 and 5, 1995. The record does not account for the five-day period of April 5 to April 10, 1995. Therefore, we would add those five days and the two trial days and increase the count to 90 days. On April 10, 1995, trial was continued by agreement of the parties and order of the court to May 15, 1995. On May 15, 1995, the hearing concluded; and the matter was continued by agreement of the parties and order of the court to May 24, 1994 for decision. These continuances, which were by agreement and approval of the court, did not add any additional time to the 90-day count. Thus, under these facts, the 90-day time limit set forth in section 2-14(c) was not violated.
Argument could be made that any counting would become unnecessary under the provisions of section 2-14(d) which provides for waiver of time limits by consent of all parties and approval of the court. If construed literally, once the 90-day time limit is exceeded by any agreement of all the parties and approval of the court, no further time period controls. It would appear that the decision in Jackson, 243 Ill.App.3d 631, 183 Ill.Dec. 708, 611 N.E.2d 1356, stands for that proposition by holding that any waiver of the time limits of the statute by the consent of all the parties and approval of the court operates as a total waiver of the right to seek a timely adjudicatory hearing. However, we cannot agree with that proposition since the result of such an interpretation with respect to the statute now under consideration would violate that statute's expressed legislative purpose which is to "insure that * * * the State of Illinois will act in a just and speedy manner to determine the best interest of the minor * * *"; to ensure expeditious adjudication; and to avoid serious delay. 705 ILCS 405/2-14(a) (West 1992). See also In re S.G., 175 Ill.2d at 479-80, 222 Ill.Dec. at 390, 677 N.E.2d at 924 (in interpreting a statute, legislative intent must be ascertained and given effect). We note that these expressed purposes were not expressed with respect to the earlier version of the statute that controlled in Jackson. Moreover, under that earlier version of the statute, the dismissal of the petition would have been with prejudice such that the court's finding of waiver to avoid that result is evident. See In re S.G., 277 Ill.App.3d 803, 810, 214 Ill.Dec. 583, 587, 661 N.E.2d 437, 441 (1996), aff'd, 175 Ill.2d 471, 222 Ill.Dec. 386, 677 N.E.2d 920 (1997) (distinguishing Jackson on the basis that statute therein required dismissal of petition with prejudice). In the instant case, however, the dismissal would have been without prejudice, and the consequence of that dismissal would not have had the same dispositive impact. Thus, in order to concomitantly recognize the waiver provision of section 2-14 with the purpose and policy provision of that statute, we must conclude that the legislature intended that the 90-day statutory time period be tolled whenever the parties and the court have unanimously agreed to continuances but that the clock resumes running once the waived period has past.
This conclusion is not inconsistent with the legislative history of section 2-14. Prior versions of that section allowed for unlimited amounts of tolling on a unilateral basis without requiring unanimous agreement of all the parties. See, e.g., Ill.Rev.Stat.1987, ch. 37, par. 802-14(a), stating in pertinent part:
"(a) * * * The 120 day period in which an adjudicatory hearing shall be held is tolled by: (A) delay occasioned by the minor; (B) a continuance allowed pursuant to Section 114-4 of the Code of Criminal Procedure of 1963 after a court's determination of the minor's physical incapacity for an adjudicatory hearing; or (C) an interlocutory appeal."
See also Ill.Rev.Stat.1987, ch. 37, par. 802-14(b); Ill.Rev.Stat.1985, ch. 37, par. 704-2 (stating "[d]elay occasioned by the respondent shall temporarily suspend, for the time of the delay, the period within which the respondent shall be tried pursuant to this Section"). The legislature's repeal of these provisions evidences an intent to eliminate (with the exception of one 30-day continuance for good cause (705 ILCS 405/2-14(c) (West 1992))) the tolling of the time period on the basis of any unilateral request for a *1077 continuance without obtaining unanimous consent. However, that repeal should not be read to eliminate tolling where all the parties have consented and where court approval has been obtained. For as stated above, to hold that there is no tolling where there is waiver and that the waiver would abolish all time limitations would lead to the anomalous result, contrary to the stated purpose of the statute, of extending rather than shortening the time period within which the adjudicatory hearing must take place.
The parents next argue that they were unfairly prejudiced at the adjudicatory hearing when the judge allowed a non-expert witness to give opinion testimony concerning an ultimate issue in the case. That witness, Jean McCarthy, a probation officer with the juvenile court, stated that she had provided interim counseling to approximately 100 sex abuse victims during the previous two years. She testified to a conversation she had with V.Z. in August 1993. At that time V.Z. told her that, from the time she was 13 years old, her stepfather, J.R. Sr., would frequently come into her room at night with a flashlight, which he would shine upon her, and that he would fondle or pinch her breasts. He watched her take baths through a hole in the bathroom door. V.Z. would cover the hole but J.R. Sr. would knock out the covering. V.Z. also told her that her stepfather showed her "porno flicks."
McCarthy testified that she spoke to M.Z., V.Z.'s mother. She stated that M.Z. did not feel that what the stepfather had done was serious because "she [V.Z.] was not penetrated." McCarthy further stated that V.Z. never recanted nor changed her story about her stepfather during the approximately two years of counseling. McCarthy's final testimony on direct, to which the appellants raise error, is as follows:
"[Assistant Public Guardian]: In your experience, did you feel that [V.Z.]'s statements or behaviors are consistent with the behaviors of other victims who have been sexually abused?
[Assistant Public Defender]: Objection. She is definitely now calling for an expert opinion. I don't believe this witness is qualified to give that type of opinion. She's had no education in this area. There has been no evidence that she has had any training in this area. She is not a psychologist or psychiatrist. They are definitely asking for an expert opinion.
THE COURT: I will overrule it. I will let her answer.
THE WITNESS: Can you repeat the question?
[Assistant Public Guardian]: Based on your experience specifically in dealing with approximately one hundred sex abuse cases, as well as any additional internship you might have done, do you feel that [V.Z.]'s allegations and actions are consistent with a victim who has been sexually abused?
[Witness]: Yes. I have had background experience in dealing with victims of sexual abuse.
THE COURT: * * * The answer was yes. I will strike the rest from the record.
* * * * * *
[Assistant Public Guardian]: What is your background experience?
[Witness]: I worked at a teenage crisis home for girls that were sexually abused, an internship with the Chicago Police Department, Youth Division, dealing with mass molestation. I also worked at Unlich's Children Home for one year dealing with children that have been physically and sexually abused."
The appellants contend that McCarthy was not qualified as an expert and thus should not have been allowed to give an expert opinion on the issue of whether V.Z.'s statements and behaviors were consistent with the behaviors of other victims who have been sexually abused. It is the appellants contention that this opinion went to the ultimate issue in the case, namely, whether V.Z. had been sexually abused.
Expert testimony is admissible if the proffered expert is qualified as an expert by knowledge, skill, experience, training, or education in a field that has at least a modicum of reliability and if that testimony will assist the trier of fact to understand evidence or determine a fact in issue. Dotto v. Okan, *1078 269 Ill.App.3d 808, 207 Ill.Dec. 190, 646 N.E.2d 1277 (1995); Poelker by Poelker v. Warrensburg Latham Community Unit School District No. 11, 251 Ill.App.3d 270, 190 Ill.Dec. 487, 621 N.E.2d 940 (1993). The test for competency of an expert is whether or not the witness exhibits sufficient knowledge of the subject matter. Fitzpatrick v. ACF Properties Group, Inc., 231 Ill.App.3d 690, 172 Ill.Dec. 657, 595 N.E.2d 1327 (1992). Experience can serve as a basis for qualification of an expert. Pyskaty v. Oyama, 266 Ill.App.3d 801, 204 Ill.Dec. 328, 641 N.E.2d 552 (1994) (expert opinion can be allowed on basis of knowledge or experience); Boyle v. Manley, 263 Ill.App.3d 200, 200 Ill.Dec. 675, 635 N.E.2d 1014 (1994) (formal academic training or specific degrees are not required to qualify person as an expert; practical experience in a field may be sufficient). While lack of education would affect the weight of the expert's testimony it would not affect its admissibility. See Robinson v. Greeley & Hansen, 114 Ill.App.3d 720, 70 Ill.Dec. 376, 449 N.E.2d 250 (1983) (trier of fact determines weight to be given testimony of expert whose knowledge is based upon practical experience rather than academic or scientific knowledge). The admissibility of expert testimony and the adequacy of the expert's qualifications are matters within the sound discretion of the trial court. E.g., Mundell v. La Pata, 263 Ill.App.3d 28, 200 Ill.Dec. 594, 635 N.E.2d 933 (1994); Hulman v. Evanston Hospital Corp., 259 Ill.App.3d 133, 197 Ill.Dec. 319, 631 N.E.2d 322 (1994).
In the instant appeal, however, the appellees do not argue that McCarthy was qualified to testify as an expert. They argue, instead, that the error was harmless. Since we agree that if there was error it was harmless because other competent evidence proved that V.Z. had been sexually abused, we will proceed to decide the issue on that basis. See In re K.L.M., 146 Ill.App.3d 489, 100 Ill.Dec. 197, 496 N.E.2d 1262 (1986) (error harmless if there is other competent evidence to support court's finding of abuse); Department of Revenue v. Marion Sopko, Inc., 84 Ill.App.3d 953, 40 Ill.Dec. 487, 406 N.E.2d 188 (1980) (reversible error occurs only where there are no probative facts to support a conclusion reached).
Here, the evidence regarding J.R. Sr.'s sexual abuse of V.Z. was compelling. McCarthy's admissible testimony, as discussed above, showed that V.Z. told her that from the time she was 13 years old her stepfather would frequently come into her room at night with a flashlight and fondle her breasts. He watched her take baths through a hole in the bathroom door. V.Z. told her that her stepfather showed her "porno flicks."
Additional evidence of the sexual abuse was presented through testimony by several other witnesses. Pauline Almestica, an investigator for the Department of Children and Family Services, testified that in July 1993, she was assigned to investigate the situation involving V.Z., T.R., P.R. and J.R. She stated that in July 1993 she spoke with V.Z. and that V.Z. told her that J.R. Sr. would come into her room at night and would look at her under the covers with a flashlight. V.Z. also told her that, on one occasion, J.R. Sr. pulled her pants down and tried to bite her vagina. V.Z. told her that J.R. Sr. would unplug a hole in the bathroom door and that he touched her breasts. Almestica further testified that J.R. Jr. told her that he saw his father, J.R. Sr., try to pinch V.Z.'s breasts and that M.Z. told her that V.Z. told M.Z. that J.R. Sr. was touching her.
V.Z., who was 18 years old at the time of the adjudicatory hearing, testified that J.R. Sr. touched her in an inappropriate manner without her permission. She stated that the sexual touching began when she was 13 or 14 years old. J.R. Sr. would come into her room every other night with a flashlight to look at her and to pinch her breasts. He would try to move the blankets so he could lift up her shirt. She stated that he would poke a hole in the bathroom door while she was taking a shower. She stated that once, when she was 15 years old, she and J.R. Sr. were "play fighting" and that J.R. Sr. tried to open her legs. She thought he was trying to bite her in the vaginal area. She also stated that J.R. Sr. would show her pictures of cartoon figures who were having intercourse.
*1079 Juanita Alvarado, a six-year friend of V.Z.'s, testified that when V.Z. was turning 16 she told her that, over a period of two years, J.R. Sr. had gone into her room and tried to touch her breasts. She stated that V.Z. also related another incident in which J.R. Sr. tried to bite her vaginal area. Alvarado stated that V.Z. told her that she did not tell her about these incidents sooner because she was scared and ashamed.
In reaching its conclusion that J.R. Sr. had sexually abused V.Z., the trial court cited to the testimony given by Almestica, McCarthy and V.Z. It stated that it was impressed with V.Z.'s credibility and with the consistency of the testimony regarding the sexual abuse. The court also noted inconsistencies and contradictions between M.Z.'s testimony and J.R. Sr.'s testimony. As a reviewing court, we cannot substitute our judgment for that of the trial court who heard the witnesses and viewed their credibility. See People v. Diana F. (In re Ashley F.), 265 Ill.App.3d 419, 202 Ill.Dec. 722, 638 N.E.2d 368 (1994) (court's findings, which are based on opportunity to observe demeanor and conduct of parties and witnesses, must be given great deference); Department of Revenue, 84 Ill.App.3d 953, 40 Ill.Dec. 487, 406 N.E.2d 188 (1980) (reviewing courts may not reweigh the evidence). Thus, based upon the strong evidence of sexual abuse, we find that the opinion testimony of McCarthy, even if error, was harmless. See K.L.M., 146 Ill.App.3d 489, 100 Ill.Dec. 197, 496 N.E.2d 1262.
For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.
Affirmed.
CAHILL and LEAVITT, JJ., concur.
NOTES
[1] M.Z. is the natural mother of all the minors; and J.R. Sr. is the stepfather of V.Z., a female, and the natural father of P.R., T.R., M.R. and J.R., all males.
[2] At that time, V.Z. was 18 years old, had become a parent, and was living with her baby and the father of that baby.
[3] Under the statute then in force, the time limit began to run when "a written demand to start time [is] made by any party respondent." Ill. Rev.Stat.1989, ch. 37, par. 802-14(b).