146 Ill. App.3d 489 (1986)
496 N.E.2d 1262
In re K.L.M. (The People of the State of Illinois, Petitioner-Appellee,
v.
Duane L. Marshall, Respondent-Appellant).
No. 4-85-0865.
Illinois Appellate Court  Fourth District.
Opinion filed August 21, 1986.
*490 David W. Butler, of Bloomington, for appellant.
Ronald C. Dozier, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor, of counsel), for the People.
Order affirmed.
JUSTICE GREEN delivered the opinion of the court:
On October 3, 1985, the circuit court of McLean County entered an order adjudicating K.L.M., a four-year-old child, to be a neglected minor within the meaning of section 2-4 of the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 702-4). On November 14, 1985, the court entered a dispositional order making the minor a ward of the court and placing her in the guardianship of the Department of Children and Family Services (DCFS). The minor's custodial father, respondent, Duane L. Marshall, has appealed contending (1) the adjudication of neglect *491 was contrary to the manifest weight of the evidence; (2) section 4-6(4)(c) of the Act (Ill. Rev. Stat. 1983, ch. 37, par. 704-6(4)(c)), under which the court permitted testimony of the minor's complaints about respondent, violated respondent's constitutional right of confrontation; and (3) the court erred in admitting opinion testimony of a psychotherapist, Debra Oberg, that the minor was sexually abused by respondent. We affirm.
The major thrust of the evidence in support of the determination that the minor was neglected came from the testimony of Maggie Wright, a caseworker for DCFS, and Debra Oberg, a psychotherapist, concerning conversations they had with the minor. This testimony is the basis of respondent's claim of breach of his right to confront the witnesses against him. Objection was made and preserved as to the entire line of questioning.
According to Wright, her first conversation with the minor occurred on April 20, 1985, in a bedroom of respondent's home where Wright had gone with a deputy sheriff in response to an abuse report. They talked while alone in a bedroom in which, according to the minor, she slept with respondent. Wright related the following conversation. She told the minor that she had heard that respondent had been touching the minor in ways that the minor disliked or found painful, and the minor responded by nodding her head and saying "[t]hat is our secret." She then asked the minor what her father "went potty with" and the minor told her that it was a "weiner." This was apparently asked in order to determine the term used by the minor to describe a penis. When asked if the respondent had ever touched her with "his weiner" in a place she did not like, the minor clutched her vaginal area and said "here" and also touched her anal area and said "here." The minor later referred to the area where her father was touching her as "where I go potty" and again indicated that what her father was doing was to be a secret. In answer to other questions, the minor indicated that her father had not touched her between her legs with his hands or other parts of his body except his penis, and that touching had occurred in bed and in the bathtub. When asked if anything came out of her father's "weiner" when touching her, the minor said "he goes potty."
Wright also testified to a further conversation with the minor on April 25, 1985, in which the minor said that her previous statements were true and again showed where she had been touched. Wright also stated that the minor was given dolls to show how she and her father were positioned when the touching took place and the dolls were placed face to face on their sides. According to Wright, the minor finally told her that "Daddy pees on me" and did so on her stomach and arm and *492 described the fluid being discharged as white in color. Wright testified that, in her opinion, the minor's nervousness, her accurate perception of what "touching" meant, and her independent indication of the body areas where she had been touched bore on the reliability of her statements.
Wright's testimony was corroborated by that of Oberg, who testified to the following three conversations. The first was on August 14, 1985. Oberg played with the minor for awhile to make her more comfortable. After awhile, the minor asked Oberg if she was the one to whom she was to tell her secret. Oberg responded that she could wait until they were better acquainted. Later, the minor asked Oberg if she wanted to know what her father did with his "weiner," but Oberg said that could wait. Oberg returned in a few days and after playing with the minor, the minor again asked if Oberg wanted to hear her secret. However, when Oberg said she did, the minor responded that she was not supposed to tell and got nervous. Oberg then met with the minor on August 21, 1985, and they went to a nearby park for about an hour and then back to the minor's room at her foster home. Oberg then asked the minor if she wanted to tell her secret. After hesitating, mentioning that she had told her father that she would not tell, the minor told Oberg that her father had put his "weiner here" pointing to the front area between her legs and "here" pointing to her buttocks area between her legs. The minor said that it hurt, and when asked if anything came out of his "weiner," she responded that some white sticky substance came out and sometimes got on her stomach. The minor indicated that her father did not put his penis in her mouth or against other parts of her body.
Oberg testified that she returned once more to play with the minor hoping to reduce her anxiety for having told about her father. No discussion was had concerning the father's conduct. Oberg explained that she had found that an abused child was much more likely to be nervous when questioned about such activity than one who had not been abused. Over respondent's objection, Oberg was permitted to testify to an opinion that the minor was abused. Her reasons centered upon her belief that the minor's testimony was accurate. Oberg stated that her opinion was based on (1) the minor's anxiety; (2) the fact that the minor answered negatively when asked if the minor's father had committed other improper acts; and (3) her, Oberg's, general experience in working on cases of this nature. Oberg also stated that, absent participation in the episodes related by the minor, she would have been unlikely to know about the appearance of semen.
Evidence was also presented that on April 20, 1985, the minor was *493 taken to a physician who found that the minor's vulva was red and her panties had a red discoloration. However, no bleeding was found in that area, and the minor's hymen appeared intact. Further evidence was presented that on a follow-up examination on May 11, 1985, the minor's external genitals had a normal appearance.
Respondent's only evidence was his testimony in which he stated: (1) the minor preferred to sleep with him rather than in her own room; (2) he had never made contact with her vaginal or anal area with his penis; (3) he never told her a secret that she was not to tell others; and (4) he did not think she could tell the difference between telling the truth and lying. However, he admitted that he had never known her to tell a lie. He also testified that he had not allowed her to watch sexually explicit or X-rated movies, and he had not heard her make comments of a sexual nature after being with her cousins with whom she sometimes spent the night.
 1 Both of respondent's first two contentions involve section 4-6(4)(c) of the Juvenile Court Act, which states:
"(c) Previous statements made by the minor relating to any allegations of abuse or neglect shall be admissible in evidence. However, no such statement, if uncorroborated and not subject to cross-examination, shall be sufficient in itself to support a finding of abuse or neglect." (Ill. Rev. Stat. 1983, ch. 37, par. 704-6(4)(c).)
Absent the foregoing legislation, the testimony of Wright and Oberg would be inadmissible hearsay. As indicated, that testimony was the heart of the State's case. Accordingly, the question of the sufficiency of the evidence to support the adjudicatory order of abuse hinges on whether that testimony met the corroboration requirements of section 4-6(4)(c).
Various items of corroborative evidence were presented. Both Wright and Oberg testified that the minor was anxious, and Oberg testified that this was a sign of abuse. The testimony of the respondent tended to indicate that the minor had limited opportunity to have learned about the sexual matters which she was purported to have described. Further testimony that the minor had visited with her mother only in respondent's presence since April 1983 indicated that the mother, who might have had motive to damage respondent, had no opportunity to arrange for the minor to give false testimony. Finally the testimony that, at the time the question of whether the minor was abused was being investigated, the minor had skin irritation in the genital area is not void of probative value. When taken together, all of this circumstantial evidence constitutes sufficient corroboration of the hearsay *494 evidence admitted under the special provision of the section.
Respondent calls our attention to People v. Lambert (1984), 104 Ill.2d 375, 472 N.E.2d 427, as holding that the existence of skin irritation of the minor's genital area was not corroboration that her father had placed his penis in that area. In Lambert, the defendant was convicted of taking indecent liberties with a male child by placing the child's sex organ in his mouth. The court held that evidence of skin irritation of the minor's anus was not corroboration of the defendant's commission of the charged offense. Here, the irritation was in the area of the sex organ which was involved in alleged conduct. Lambert is not analogous.
The hearsay testimony of Wright and Oberg concerning defendant's conduct is not only sufficient to fully support the determination of the trial court, it makes a very convincing case. The testimony of both Wright and Oberg indicates that they were very skillful in their conversations with the minor. They carefully refrained from suggestive questions or other conduct which might have influenced statements which the minor purportedly made. No apparent reason has been shown why she might have fabricated her story. She would have to have been a child of great, natural theatrical talent to have concocted such a tale and presented it as she did. She would have been most unlikely to describe semen unless she had seen it, and it would have been unlikely she had seen it unless the events she related had actually taken place. Taking all circumstances into consideration, this hearsay evidence bore a high likelihood of being reliable.
 2 Defendant's second claim of error is that the introduction of the hearsay testimony of Wright and Oberg violated a constitutional right he had to confront the witnesses against him. The sixth amendment to the United States Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." (Emphasis added.) (U.S. Const., amend. VI.) In Pointer v. Texas (1965), 380 U.S. 400, 13 L.Ed.2d 923, 85 S.Ct. 1065, the confrontation clause was held to be incorporated in the due process clause of the fourteenth amendment and thus applicable to State prosecutions. While, as the sixth amendment indicates, the confrontation clause is directed to criminal proceedings, "[s]o basic, however, are the values thought to be served by confrontation that confrontation requirements on occasion are found constitutionally extended to persons other than the accused in a criminal case as an aspect of due process." McCormick, Evidence sec. 252, at 749 (3d ed. 1984).
The reported cases called to our attention where the confrontation *495 clause has been applied to civil cases are cases involving procedures before administrative agencies. (Willner v. Committee on Character & Fitness (1963), 373 U.S. 96, 10 L.Ed.2d 224, 83 S.Ct. 1175; Greene v. McElroy (1959), 360 U.S. 474, 3 L.Ed.2d 1377, 79 S.Ct. 1400; cf. United States v. Nugent (1952), 346 U.S. 1, 97 L.Ed. 1417, 73 S.Ct. 991.) In the case of In re Oliver (1948), 333 U.S. 257, 92 L.Ed. 682, 68 S.Ct. 499, the right of cross-examination was held to be essential to due process in a State contempt case. (See also Jenkins v. McKeithen (1969), 395 U.S. 411, 23 L. Ed 2d 404, 89 S.Ct. 1843.) None of the foregoing cases involved application of the confrontation clause to a purely civil proceeding in a State court. In most cases, the deviation from fair procedure was gross and in no case was a carefully crafted statutory hearsay exception involved. We conclude that although confrontation rights may be an aspect of due process in purely civil proceedings, the confrontation clause need not be applied strictly in such proceedings.
 3 In light of our determination that confrontation rights of a party to a civil case are not as complete as those of an accused in a criminal case, we examine the application of those rights to section 4-6(4)(c), and the facts of this case. We begin with consideration of the most recent important United States Supreme Court cases on the subject. First, in Dutton v. Evans (1970), 400 U.S. 74, 27 L.Ed.2d 213, 91 S.Ct. 210, the admission of a co-conspirator's out-of-court statement made during the concealment phase of the conspiracy was upheld even though the co-conspirator did not testify, and second, in Ohio v. Roberts (1980), 448 U.S. 56, 65 L.Ed.2d 597, 100 S.Ct. 2531, a transcript of the testimony of witnesses at the preliminary hearing was held to have been properly admitted as part of the State's case at trial when that witness was unavailable.
The contribution of Dutton to the relationship between hearsay rules and the confrontation clause has been described in these words:
"Based upon Dutton, if a hearsay declarant testifies at trial and is subject to cross-examination, confrontation is satisfied. If the out-of-court statement is admitted pursuant to a hearsay exception when the declarant is not called at trial, whether available or not, the test for satisfaction of the confrontation clause involves a search for trustworthiness and accuracy with respect to the statement. The various tests of Dutton for determining trustworthiness and accuracy were summarized in Park v. Huff, 493 F.2d 923, 931 (1974), rev'd en banc, 506 F.2d 849 (5th Cir.), cert. denied, 423 U.S. 824 [46 L.Ed.2d 40, 96 S.Ct. 38], (1975), as follows:

*496 (1) Does the trier of fact have a `satisfactory basis for evaluating the truth of the prior statement?' (2) How `real' is the possibility that cross-examination `could conceivably have shown the jury that the statement, though made, might have been unreliable?' (3) What `indicia of reliability' were present to permit the testimony to be placed before the jury although there was not confrontation of the declarant?
How these criteria differ from the suppositions that underlie the hearsay exceptions is unclear.
As a practical matter, actual treatment of hearsay in Illinois should rarely conflict with the confrontation clause's search for trustworthiness. Statements to be admitted pursuant to a hearsay exception must possess the `indicia of reliability' and provide the `satisfactory basis for evaluating the truth of the prior statement' mandated in Dutton." E. Cleary & M. Graham, Illinois Evidence sec. 807.1, at 616-17 (4th ed. 1984).
In Roberts, the court stated:
"In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate `indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." Ohio v. Roberts (1980), 448 U.S. 56, 66, 65 L.Ed.2d 597, 608, 100 S.Ct. 2531, 2539.
In the case on appeal, the declarant was a four-year-old child. We are unaware of a decision of a court of review of this State permitting one so young to testify as a witness. However, in People v. Miller (1978), 58 Ill. App.3d 156, 373 N.E.2d 1077, this court upheld a conviction partly based on testimony as to a statement the four-year-old victim of sex abuse gave to his mother shortly after the act and while the victim was still excited by the act. That case involved the prosecution for a criminal offense while here, the custody and guardianship of a minor is in issue. However, the cases are otherwise very similar. There, the reliability of the statement was supported by the rationale that a four-year-old would be likely to speak truthfully about an event which had just happened and about which he was still excited. Here, the statement did not concern a recent event, and we cannot indulge a presumption that a four-year-old would not tell a lie or be confused concerning an event of the nature involved. Rather, the reliability of the minor's statement is based upon the factors we have previously related. The evidence indicated that the story had not been suggested to *497 her and that it was very unlikely that she would know about acts of the nature described and of the appearance of semen if the alleged acts of abuse had not been inflicted upon her.
Thus, here, the trier of fact had a basis to conclude the truth of the hearsay statement and could weigh the strength of the circumstances indicating reliability. Because of the tender age of the minor, cross-examination would have been of little aid in finding the truth, as the minor would probably have become confused. She was much more likely to have been accurate in her conversations with Wright and Oberg than she would have been under cross-examination.
In Miller, this court indicated that certain types of statements by young people who have been subject to sexual abuse are likely to be reliable under certain conditions and that to exclude such evidence is not in the interest of justice. The legislature obviously agreed when it enacted section 4-6(4)(c). Many cases of sexual abuse cannot be proved without this type of evidence. A policy question of protecting young minors from the trauma of testifying in cases of this nature is also involved. Unlike in Miller, the relatively well-defined doctrine permitting utterance closely related in time to the event in question and accompanied by excitement is not involved. However, section 4-6(4)(c) deals with only a particular kind of civil case where any confrontation rights encompassed by due process are not as strict as those in criminal cases. As section 4-6(4)(c) has been applied here, we are satisfied that the procedure came close enough to the confrontation requirements of Dutton and Roberts to afford due process to respondent. Whether section 4-6(4)(c) affords due process to other respondents under other circumstances will have to be determined on a case-by-case basis.
 4 Finally, respondent contends that the court erred in (1) permitting Oberg to testify on direct examination that in her opinion, the minor was "a victim of sexual abuse"; and (2) in permitting Oberg, in answer to a question on cross-examination by the minor's guardian ad litem to testify that in her opinion the minor's father was the person who sexually abused her. Any error in this testimony was clearly harmless. The case was tried at bench. As we have indicated, the evidence against the respondent was very strong. Prior to giving her opinion, Oberg had testified, without objection, about factors which would bear upon whether the minor was telling the truth. We deem it most unlikely that the court gave any substantial weight to the mere opinion of Oberg.
 5 As far as the opinion that the father was the perpetrator of the abuse is concerned, we find no merit to the objection that was made to the question giving rise to the opinion. That objection was that the *498 question was beyond the scope of the direct. As the direct examination had elicited an opinion that the child was "a victim of sexual abuse," the question as to who committed the abuse was not beyond the scope of the direct examination regardless of what other infirmities the question might have borne. Thus, no error resulted from that ruling.
 6 The issue of the propriety of questions concerning Oberg's opinion as to whether the child was "a victim of sexual abuse" is more complicated. Respondent's objection to the question is that it was asking for an opinion as to whether the minor was speaking truthfully and accurately when she talked to Wright and Oberg. Respondent draws analogy to the situation where a witness purports to give an expert opinion as to the accuracy and truthfulness of the testimony of another witness. However, even then, such an expert opinion is admissible where the witness whose testimony in question is under a disability such as amnesia. (Dodson v. Shaw (1983), 113 Ill. App.3d 1063, 488 N.E.2d 188.) Here, the minor was not a witness, and the State had a burden of showing that her statements bore an indicia of reliability. She was under some disability of infancy and some expertise was of aid to the trier of fact, who might not have been fully aware of the likely reactions of a minor to sexual abuse. (See People v. Jordan (1984), 103 Ill.2d 192, 469 N.E.2d 569.) Oberg's opinion was not improper, because it bore on the reliability of the minor's statements to Wright and Oberg.
 7 Rather, we are concerned with the opinion because it covered the ultimate issue of the entire case. We are aware that opinions are no longer precluded merely because they cover an ultimate issue. Here, the question of the accuracy of the minor's statement was the most important question in the case. As we have indicated, expert testimony was helpful to the trier of fact in regard to how a four-year-old would be likely to react under the circumstances. Beyond that, no need existed for further expert testimony. An opinion that a party should win is not a permissible expert opinion. This is so even though expert opinion is permissible upon some of the ultimate issues involved in determining who should win. (See E. Cleary & M. Graham, Illinois Evidence sec. 704.1, at 479 (3d ed. 1984).) In any event, any error was harmless.
The judgment appealed is affirmed.
Affirmed.
MORTHLAND and SPITZ, JJ., concur.